**John W. RUSSO, Plaintiff-Appellee,**

v.

**MATSON NAVIGATION COMPANY, a corporation, Defendant-Appellant.**

**No. 71-3057.**

United States Court of Appeals, Ninth Circuit.

Oct. 29, 1973.

Leon A. Pinney (argued), John S. Matthew, of Sikes, Pinney & Matthew, North Hollywood, Cal., for defendant-appellant.

Joel N. Klevens (argued), George E. Bodle, Daniel Fogel, Eric Julber, of Bodle, Fogel, Julber, Reinhardt & Rothschild, Los Angeles, Cal., for plaintiff-appellee.

Before HUFSTEDLER and WRIGHT, Circuit Judges, and RENFREW, District Judge.*

## OPINION

**PER CURIAM:**

Defendant Matson Navigation Company appeals from a judgment on a jury verdict in favor of plaintiff seaman in the amount of $40,000. The sole issue on appeal is whether the district court correctly refused to set off against the award disability pension benefits being paid to plaintiff. We affirm the judgment.

Russo, a seaman employed by Matson, was injured aboard Matson's vessel "Pacific Trader." He brought suit under the Jones Act [46 U.S.C. § 688 (1970)] and general maritime law, and received a verdict for $40,000. Russo receives $300 a month as a disability retirement pension pursuant to an agreement between the Pacific Maritime Association, to which Matson belongs, and plaintiff's union, the Seafarer's International Union of North America, Pacific District.

Matson sought to introduce evidence of the pension benefits, but the court refused to allow it, ruling that whether a setoff is allowable is a matter of law for the court's determination, and not a question for the jury. After verdict, the court entered judgment thereon without the requested setoff.

Matson contends that setoff of the pension benefits is proper under Section 5 of the Federal Employers' Liability Act [45 U.S.C. § 55], and in light of a general rule of law that a tortfeasor need not pay twice for the same damages.

Section 5 of the FELA is incorporated in the Jones Act by 46 U.S.C. § 688. Section 5 provides:

> "Any contract, rule, regulation, or device whatsoever, the purpose or intent of which shall be to enable any common carrier to exempt itself from any liability created by this chapter, shall to that extent be void: *Provided,* That in any action brought against any such common carrier under or by virtue of any of the provisions of this chapter, *such common carrier may set off therein any sum it has contributed or paid to any insurance, relief benefit, or indemnity that may have been paid to the injured employee or the person entitled thereto on account of the injury* or death for which said action was brought." [Emphasis added.]

Matson contends that, because it contributes to the fund from which plaintiff's benefits are paid, and because they are paid "on account of the injury," setoff of these benefits against the award

---

* Of the Northern District of California.

is proper under Section 5. A denial of setoff, Matson contends, forces it to pay twice for the same injury.

Clearly, the statute does not provide for a setoff of "benefits received," but rather for a setoff of "any sum . . . contributed." Therefore, any setoff to which Matson might be entitled must be limited to the amount it has contributed to the pension plan. Matson claims, however, that this amount is far in excess of the benefits being received by Russo.

■ Generally, a tortfeasor need not pay twice for the damage caused, but he should not be allowed to set off compensation from a "collateral source" against the amount he owes on account of his tort.

"[T]he broad rule seems to be that where the plaintiff receives from the tortfeasor payments specifically to compensate him for his injury, the tortfeasor need not pay twice for the same damage, and therefore such compensation payments should be taken into account in fixing tort damages. [Citations] On the other hand, where the injured plaintiff's compensation comes from a 'collateral source,' it should not be offset against the sum awarded for the tort nor considered in determining that award."

United States v. Price, 288 F.2d 448, 449 (4th Cir. 1961); Gypsum Carrier, Inc. v. Handelsman, 307 F.2d 525, 534 (9th Cir. 1962). The issue, then, is whether the pension benefits come from a "collateral source," or directly from Matson as compensation for Russo's injury.

■ In analyzing this issue, it is well established that courts should look at "the purpose and nature of the fund and of the payments," and not merely at their source. Gypsum Carrier, Inc. v. Handelsman, *supra* at 534 n.31, and cases cited therein.

Two courts in other jurisdictions have recently considered almost the precise issue with which we are confronted. Haughton v. Blackships, Inc., 462 F.2d 788 (5th Cir. 1972), virtually indistinguishable from this case, held that, in computing damages payable to a seaman who was injured aboard ship, it was improper to consider the seaman's maritime pension in mitigation of damages. The court found that, although all money in the retirement fund was contributed by the employer, the fund was established as the result of a contract between the employer and the union and was in the nature of a fringe benefit or deferred compensation. In other words, the pension was a term of employment rather than an attempt by the employer to indemnify itself against liability.

The court in Hall v. Minnesota Transfer Railway Co., 322 F.Supp. 92 (D. Minn.1971), reached a similar conclusion. The court considered a railroad's claim that certain insurance benefits should be set off in light of Section 5 of the FELA, since the carrier paid the insurance premiums. The court concluded that Section 5 does not permit setoff of amounts that are in effect part of an employee's income and are paid without regard to liability on the part of the employer.

"On the basis of the foregoing, the court concludes that where the insurance policy is one of general hospital and medical coverage upon which the insured may make claim without regard to liability on the part of the employer, such a policy is a fringe benefit maintained by the employer and is in effect part of the employee's income for services rendered, and the collateral source rule prohibits set-off of premiums paid or benefits received thereunder by the employee. In this court's opinion Section 5's express set-off proviso was not intended and does not permit set-off of amounts 'paid' or 'contributed' by the employer to a policy of such general coverage pursuant to a collective bargaining contract."

*Id.* at 97.

■ In light of *Haughton* and *Hall*, plaintiff's pension benefits are not, for

purposes of Section 5, received "on account of his injury," but rather as a fringe benefit of his employment. This benefit is the result of a contractual agreement between plaintiff's union and the association to which Matson belongs.

Under the pension agreement, the employee's retirement, the length of his service, and the extent of his disability are all crucial to his eligibility for benefits. Eligibility is not dependent, however, on disability occurring in the course of employment or as the result of an employer's negligence. A disabled employee receives no pension unless he has worked a minimum of 10 years, has been permanently and totally disabled, and has retired from sea duty. It is unnecessary that an injury cause the disability; an illness suffices. Once the employee is eligible for a pension, the amount increases with the length of employment. Thus, looking at the nature and purpose of the pension plan agreement, it is clear that benefits paid from it are "collateral" to Matson's obligation to pay for its wrongdoing.[1]

In summary, Matson does not bear a double burden in this case if no setoff is allowed. Pension benefits paid from the fund to which Matson contributes are one form of compensation for plaintiff's employment. The $40,000 judgment against Matson is the sole burden that it must bear directly as a result of its negligence. "This may permit a double recovery, but it does not impose a double burden. The tortfeasor bears only the single burden for his wrong." Gypsum Carrier, Inc. v. Handelsman, 307 F.2d 525, 534 (9th Cir. 1962).

Affirmed.

1. This is to be distinguished from benefits received under a limited employer indemnity insurance policy, which might be appropriately set off.
"Where the insurance is written to cover only those injuries incurred on the job for which the employer might be liable by statute or common law, it is solely for the benefit of the employer and cannot be characterized as a fringe benefit given employees in partial consideration for their labors."

See, e. g., Thomas v. Humble Oil & Refining Co., 420 F.2d 793 (4th Cir. 1970)
. . . "

Hall v. Minnesota Transfer Railway Co., 322 F.Supp. 92, 96–97 (D.Minn.1971); Haughton v. Blackships, Inc., 462 F.2d 788, 791 (5th Cir. 1972).