Benjamin L. LUCHT, Plaintiff,

v.

The CHESAPEAKE & OHIO RAILWAY COMPANY, a Virginia Corporation, Defendant.

No. 78–544.

United States District Court, W. D. Michigan, S. D.

May 5, 1980.

William Waddell of Dilley, Dewey & Waddell, Grand Rapids, Mich., for plaintiff.

W. Fred Hunting, Jr. of Law, Weathers, Richardson & Dutcher, Grand Rapids, Mich., for defendant.

## OPINION

ENSLEN, District Judge.

This action is brought under the Federal Employers' Liability Act (FELA) 45 U.S.C. § 51 et seq. Plaintiff was employed by the Defendant as a locomotive engineer and alleges he was injured on two occasions due to the Defendant's negligence. The Plaintiff alleges that his right knee was injured on February 8, 1976 when he slipped and fell while watering an engine. Plaintiff also alleges that the Defendant's negligence contributed to a railroad crossing accident occurring on July 28, 1976, in which his knee was re-injured.

With discovery complete and a trial date set, Plaintiff has brought a Motion in limine to preclude the Defendant from introducing evidence to the jury of two settlements the Plaintiff has made with regard to the July 28 crossing accident. In particular, the Plaintiff desires to insure, by this Motion, that evidence regarding funds received from his personal automobile insurance carrier, and evidence regarding the settlement of the claim against the owner and driver

of the truck which collided with the train are excluded.

## PLAINTIFF'S SETTLEMENT WITH HIS OWN INSURANCE CARRIER FOR NO FAULT BENEFITS

The Plaintiff urges the Court to find that the no fault benefits he received from his own insurance carrier fall within the collateral source rule whereby the tortfeasor cannot decrease his damages by the amount of the insurance received by the injured party where the tortfeasor did not contribute to the payment of the premiums of the insurance. See 22 Am.Jur.2d Section 210, at 294. The theory behind this rule is that either the Plaintiff or the Defendant will receive a windfall in that either the Plaintiff will receive a "double recovery" or the Defendant will not have to pay for his wrongdoing. Various social policy objectives have led most courts to prefer the former.

The "collateral source" rule has been applied in the FELA setting by the appellate courts with the only question being whether the insurance is in fact a "collateral source". See generally *Patterson v. Norfolk and Western Railway*, 489 F.2d 303 (CA 6 1973); *Blake v. Delaware and Hudson Railway Company*, 484 F.2d 204 (CA 2 1973).

■ The collateral source rule has been codified in the FELA setting, the effect of which is to further broaden what is determined to be a "collateral source". Not only is it true "that the employer-tortfeasor is not entitled to mitigate damages by setting off compensation received by the employee from an independent source" (*Blake*, supra at 206 citing *Haughton v. Blackships, Inc.*, 462 F.2d 788, 790 (CA 5 1972)), but "under 45 U.S.C. 55 the railroad is entitled to set off only the premiums, not what the premiums bought" (when the railroad's own insurance supplies benefits to the employee) (Friendly's concurrence in *Blake*, supra at 207).

■ Once it is established that the Plaintiff's personal no-fault benefits are independent and thus a collateral source of relief, it is but a short step to the conclusion that such collateral benefits are inadmissible as evidence. In holding that evidence of the petitioner receiving disability pension benefits, under the Railroad Retirement Act of 1937, was properly excluded by the district court in a FELA case, the Supreme Court stated:

> In our view the likelihood of misuse by the jury clearly outweighs the value of this evidence . . . We have recently had occasion to be reminded that evidence of collateral benefits is readily subject to misuse by a jury. *Tipton v. Socony Mobile Oil Company, Inc.*, 375 U.S. 34, 84 S.Ct. 1, 11 L.Ed.2d 4. It has long been recognized that evidence showing that the defendant is insured creates a substantial likelihood of misuse. Similarly, we must recognize that the petitioner's receipt of collateral insurance benefits involves a substantial likelihood of prejudicial impact. *Eichel v. New York Central R. Co.*, 375 U.S. 253 at 255, 84 S.Ct. 316 at 317, 11 L.Ed.2d 307 (1963).

Not only is the reasoning of the Supreme Court sound and the authority undiminished, but the Defendant in the instant case has not alleged a legitimate use for this evidence (unlike the Defendant in *Eichel*, supra who argued that the evidence bore on the issue of malingering). Therefore evidence relating to the receipt of personal no-fault insurance benefits should not be introduced by the Defendant.

## MANNER OF CREDITING SETTLEMENT WITH TRUCK DRIVER/OWNER

■ Plaintiff has conceded that the amount, if any, recovered against the Defendant should be reduced by the amount he has already received from the alleged co-tortfeasor, the truck driver/owner involved in the July 28 accident. The issue contested by the parties relates to the method of crediting the Defendant with this prior settlement. The Plaintiff argues that this is a function that the Court should perform, while the Defendant reasons that the settlement should be presented to the

jury and the jury should be instructed to credit the Defendant for the settlement.

In their briefs, the parties cited little federal law with regard to this question and the Court found but slight guidance from other federal decisions. Although this issue has been the subject of considerable debate, and has resulted in divergent positions among the state courts, no clear federal rule as to the procedure of crediting a co-tortfeasor settlement has emerged. See 94 A.L.R.2d 352 and Supplement. Most of the federal decisions in which this issue has arisen involved diversity jurisdiction where the courts were attempting to discern the state procedure in order to apply the appropriate state law.

In one federal case (admiralty) which did address this issue, *Billiot v. Sewart Seacraft, Inc.*, 382 F.2d 662 (CA 5 1967), the court held that the court should perform the necessary crediting. Although admiralty principles are not uniformly transferable to other federal questions (and it is possible that the procedure developed under the Jones Act, 46 U.S.C. § 668, might differ from that under FELA) the reasoning behind the *Billiot* court decision appears sound and this Court adopts its reason and its rule.* Since the jury's only need for evidence of the settlement would be to mechanically subtract this amount from their original award, the crediting by the Court does not interfere with the jury's fact finding function, which centers around the weighing of contrary evidence, and assessing the credibility of adverse witnesses and their testimony.

Assuming that the jury properly uses the evidence of the settlement, it is hard to imagine how the Defendant is disadvantaged by the Court performing the function of simple subtraction in the jury's place. On the other hand, it takes no exceedingly active imagination to perceive of ways in which this information could be misused. Therefore, it is this Court's Opinion that requiring the Court to credit the Defendant with the settlement of co-tortfeasor settlement is not only a method consistent with

the slight federal precedent on this issue, but is also the sounder of the methods.

Plaintiff shall prepare an Order, consistent with this Opinion.

---

* See also District Court cases cited by Plaintiffs in their briefs at page 3.