**Alan R. FOLKESTAD, Plaintiff-Appellant and Cross-Appellee,**

v.

**BURLINGTON NORTHERN, INC., a Delaware corporation, Defendant-Appellee and Cross-Appellant.**

**Nos. 85–4280, 85–4305.**

United States Court of Appeals, Ninth Circuit.

Argued and Submitted Oct. 3, 1986.

Decided April 1, 1987.

---

**1378**

Siegfried Hesse, Berkeley, Cal., for plaintiff-appellant and cross-appellee.

Thomas W. Spence, St. Paul, Minn., and Betty Jo Christian, Washington, D.C., for defendant-appellee and cross-appellant.

Before SCHROEDER, NORRIS and BRUNETTI, Circuit Judges.

SCHROEDER, Circuit Judge:

This is an action by an injured employee against his employer, the Burlington Northern Railroad, for damages under the Federal Employers Liability Act, 45 U.S.C. §§ 51 *et seq.* (1982). Judgment was entered in favor of the plaintiff in the amount of $490,000. Although both sides originally appealed, all of the issues raised in the employee's appeal have been withdrawn by virtue of the parties' settlement, and we decide only the issue raised in the railroad's cross-appeal.

That issue is whether the district court properly refused to permit an offset of approximately $57,000 that had already been paid to the employee through the railroad industry's health and welfare plan to which Burlington Northern was a party. The district court based its refusal upon its interpretation of section 5 of the FELA, 45 U.S.C. § 55, a section which has spawned considerable litigation concerning setoff of benefits paid pursuant to this plan.[1]

Section 5 provides:

Any contract, rule, regulation, or device whatsoever, the purpose or intent of which shall be to enable any common carrier to exempt itself from any liability created by this chapter, shall to that extent be void: *Provided,* that in any action brought against any such common carrier under or by virtue of any of the provisions of this chapter, such common carrier may set off therein any sum it has

**1.** Setoff was allowed in *Clark v. Burlington Northern, Inc.,* 726 F.2d 448 (8th Cir.1984); *Gonzalez v. Indiana Harbor Belt Railroad Co.,* 638 F.Supp. 308 (N.D.Ind.1986); *Diaz v. Indiana Harbor Belt Railroad Co.,* Civil No. H 79–13 (N.D.Ind. Dec. 1, 1981) (unpublished opinion cited by Burlington Northern); *Nelson v. Penn Central Railroad Co.,* 415 F.Supp. 225 (N.D.Ohio 1976); *Thomas v. Penn Central Co.,* 379 F.Supp. 24 (W.D.Penn.1974); and *Rogers v. Chicago and Northwestern Transportation Co.,* 59 Ill.App.3d 911, 16 Ill.Dec. 845, 375 N.E.2d 952 (1978). Setoff was disallowed in *Patterson v. Norfolk and Western Railway Co.,* 489 F.2d 303 (6th Cir. 1973); *Blake v. Delaware and Hudson Railway Co.,* 484 F.2d 204 (2d Cir.1973); *Herbst v. Bur-*

*lington Northern Railroad Co.,* No. CV–84–51–BLG (D.Mont. Apr. 22, 1985); *Lucht v. Chesapeake & Ohio Railway Co.,* 489 F.Supp. 189 (W.D.Mich.1980); *Urbaniak v. Erie Lackawanna Railway Co.,* 424 F.Supp. 981 (W.D.N.Y.1977); *Hall v. Minnesota Transfer Railway Co.,* 322 F.Supp. 92 (D.Minn.1971); *Seaboard Coastline Railroad Co. v. Delahunt,* 179 Ga.App. 647, 347 S.E.2d 627, 631 (1986); *Anderson v. Burlington Northern, Inc.,* 709 P.2d 641 (Mont.1985), *cert. denied,* —— U.S. ——, 106 S.Ct. 2902, 90 L.Ed.2d 988 (1986); and *Southern Pacific Transportation Co. v. Allen,* 525 S.W.2d 300 (Tex.Civ.App.1975). The issue was discussed but not decided in *Travelers Insurance Co. v. Keith,* 283 N.C. 577, 196 S.E.2d 731 (1973).

contributed or paid to any insurance, relief benefit, or indemnity that may have been paid to the injured employee or the person entitled thereto on account of the injury or death for which said action was brought.

All of the employee's medical expenses incurred as a result of his industrial accident were paid through the health and welfare plan, administered by the Travelers Insurance Company, known as Group Policy GA–23000. The plan is financed wholly by premiums paid by the railroads. The plan has been in effect since the 1950s, and the present version, apparently without amendment material to this case, since 1972. Its history is described in *Urbaniak v. Erie Lackawanna Railway Co.*, 424 F.Supp. 981, 983–84 (W.D.N.Y.1977).

The 1975 Health and Welfare Agreement between railroads represented by the National Carriers' Conference Committee and railroad employees represented by the Brotherhood of Maintenance of Way Employees contains a provision which expressly provides for the setoff the railroad seeks. The agreement states that payment of benefits under tbe plan "will satisfy any right of recovery against the employing railroad for such benefits to the extent of the benefits so provided."[2] The railroads and the unions have thus agreed that benefits under the plan will satisfy FELA liability and that setoffs such as that sought by the employer in this case should be allowed.

The plan is thus intended, at least in part, to serve as a device for indemnifying railroads for their liability under the FELA. For this reason, the railroad argues that the setoff is permissible under the proviso to section 5.

The district court nevertheless held that setoff should not be allowed because, in its view, section 5 prohibits setoff of any benefits received through insurance, even of benefits received from an insurance plan financed solely by the employer, rather than by the employee, and expressly earmarked by the union and employer to satisfy FELA liability. For the reasons set forth in the following discussion, we hold that the setoff should have been permitted in the light of the history of the statute and the weight of subsequent judicial authority interpreting section 5.

## DISCUSSION

The legislative history of section 5 indicates that it was enacted to bar devices that railroads were using to exempt themselves from full liability for employee injuries. *See* 42 Cong.Rec. 4527 (1908) (statement of Sen. Dolliver); H.R.Rep. No. 1386, 60th Cong., 1st Sess. 6–9 (1908). Congress was responding also to employers' efforts to contract out of liabilities imposed under state acts. *See id.* at 30–75 (reprinting state laws). As this court has observed, "the practice of obtaining waivers prior to accidents and as an incident of employment

---

2. The entire provision reads as follows:

*ARTICLE III—LIABILITY CASES*
*Section A. Employees of Non-Hospital Association Railroads*

In case of an injury or a sickness for which an employee who is eligible for employee benefits under Group Policy Contract GA–23000 and may have a right of recovery against either the employing railroad or a third party tort-feasor (a party who has committed a wrongful act), or both, benefits will be provided under the policy contract subject to the provisions hereinafter set forth. The parties hereto do not intend that benefits provided under the policy contract will duplicate, in whole or in part, any amount recovered from either the employing railroad or a third party tort-feasor for hospital, surgical, medical or related expenses of any kind specified in the policy contract, and they intend that benefits provided under the policy contract will satisfy any right of recovery against the employ-

ing railroad for such benefits to the extent of the benefits so provided. Accordingly,—

(1) Benefits provided under the policy contract will be offset against any right of recovery the employee may have against the employing railroad for hospital, surgical, medical or related expenses of any kind specified in the policy contract.

(2) On any recovery from any tort-feasor other than the employing railroad for hospital, surgical, medical or related expenses of any kind specified in the policy contract, the employee will reimburse the Insurer from such recovery for any benefits paid under the policy contract. Except in a case involving an on-duty injury, the Insurer will be subrogated to any right of recovery the employee may have against any tort-feasor other than the employing railroad for hospital, surgical, medical or related expenses of any kind specified in the policy contract.

was well-known to Congress and the object of § 5." *Bay v. Western Pacific Railroad Co.*, 595 F.2d 514, 516 (9th Cir.1979) (per curiam) (citing *Philadelphia, Baltimore & Washington Railroad Co. v. Schubert*, 224 U.S. 603, 612–13, 32 S.Ct. 589, 592, 56 L.Ed. 911 (1912)); *see also Duncan v. Thompson*, 315 U.S. 1, 62 S.Ct. 422, 86 L.Ed. 575 (1942) (applying § 5 to invalidate a post-accident agreement whereby an employee was required, as a prerequisite to bringing a lawsuit, to return monies advanced to him by the railroad).

The history also shows that the proviso to section 5 was included in order to ensure that the employer was given credit for money it had already paid to the employee on account of the injury. As one court has summarized, the overall concern of the section is that "an employee be compensated to the full extent of his loss, not that an employer be precluded from indemnifying himself against potential FELA liability as, for instance, by carrying liability insurance coverage." *Hall v. Minnesota Transfer Co.*, 322 F.Supp. 92, 95 (D.Minn.1971).

The statute in part codifies the common law collateral source rule which prevents a tortfeasor (the employer) from reducing its liability by payments that the injured party (the employee) has received from sources collateral to the tortfeasor. Restatement (Second) of Torts, § 920A ("Payments made to or benefits conferred on the injured party from other sources are not credited against the tortfeasor's liability, although they cover all or a part of the harm for which the tortfeasor is liable."). Thus, early litigation under section 5 established that payments from insurance to which the employer had not contributed could not be used to reduce an employer's liability under the statute. *See, e.g., Bangor and Aroostook R. Co. v. Jones*, 36 F.2d 886 (1st Cir.1929). Payments under the Railroad Retirement Act, a social program funded by collections from the employer and employee and to a limited extent from the general public, and designed to facilitate the retirement of elderly railroad em-

ployees, were likewise deemed to come from a collateral source. *See, e.g., Sinovich v. Erie Railroad Co.*, 230 F.2d 658, 661 (3d Cir.1956); *New York, New Haven & Hartford R. Co. v. Leary*, 204 F.2d 461, 467–68 (1st Cir.), *cert. denied*, 346 U.S. 856, 74 S.Ct. 71, 98 L.Ed. 370 (1953); *Hetrick v. Reading Co.*, 39 F.Supp. 22, 25 (D.N.J. 1941).

This circuit recognized the same principle when we construed section 5 in the context of a case arising under the Jones Act.[3] *Gypsum Carrier, Inc. v. Handelsman*, 307 F.2d 525 (9th Cir.1962). We there refused to permit an employer to set off benefits a seaman had received from a disability fund, supported primarily by employee contributions, against the employer's obligation for maintenance and cure. "The tortfeasor should not be required to compensate twice for the same injury, but he should not have the benefit of payments to the injured person which he did not make. The test is therefore whether the particular payments came from [the tortfeasor]...." *Id.* at 534 (footnote omitted). Thus if employee contributions pay for the insurance, benefits are regarded as collateral to the employer and setoff is prohibited.

This is fully in accord with the common law collateral source rule; the tortfeasor's liability generally may not be reduced by payments which the injured party received from insurance unless the insurance was procured by the tortfeasor. Where, however, the tortfeasor voluntarily procures the insurance, the collateral source rule does not apply and setoff is generally permitted. *See* 11 A.L.R.3d at 1116–17. The Restatement (Second) of Torts applies this principle to insurance purchased by the tortfeasor regardless of whether it is limited to liability indemnification. Section 920A comment a. The principle that payments made by a tort defendant have the effect of reducing its tort liability "is also true of payments made under an insurance policy that is maintained by the defendant, whether made under a liability provision or without regard to liability, as under a medi-

---

**3.** The Jones Act, 46 U.S.C. § 688 (1982), incorporates "all statutes of the United States conferring or regulating the right of action for death in the case of railway employees." FELA is thereby made applicable to Jones Act cases. *See, e.g., Russo*, 486 F.2d at 1019.

cal-payments clause." *Id.* That common law principle would appear to allow setoff, once it is established that premiums were paid by the employer.

We are here concerned, however, with section 5 of the FELA. The question of whether employer-purchased insurance benefits may offset liability is complicated by the statutory framework. The issue has arisen in an evolving historical context. It surfaced after employers subject to the FELA began to obtain insurance policies that, like the Travelers Insurance Group Policy GA–23000 involved in this case, made the employers responsible for all of the premium contributions. Under such policies, unlike the policies considered in earlier cases such as *Gypsum* and *Bangor*, benefits are financed by the employers and not by the employees.

The problem that has troubled the courts has been whether to treat the insurance as a fringe benefit in part compensation for the employee's work. If it is viewed as the product of the employee's labors, it is deemed to come from a source collateral to the employer/tortfeasor rather than from the employer/tortfeasor itself. Setoff would permit avoidance of FELA liability, and such avoidance is prohibited by section 5. If, on the other hand, the insurance is viewed as a contribution by the employer intended to fulfill FELA obligations, it would appear to fall within the proviso, and setoff should be permitted.

In dealing with this issue both in the railroad and maritime cases, courts have been virtually unanimous in their refusal to make the source of the premiums the determinative factor in deciding whether the benefits should be regarded as emanating from the employer or from a "collateral source." Rather, courts have tried to look to " 'the purpose and nature of the fund and of the payments' and not merely at their source." *See, e.g., Russo v. Matson Navigation Co.,* 486 F.2d 1018, 1020 (9th Cir.1973) (per curiam) (quoting *Gypsum Carrier,* 307 F.2d at 534 n. 31); *see also Clark v. Burlington Northern, Inc.,* 726 F.2d 448, 450 (8th Cir.1984); *Haughton v. Blackships, Inc.,* 462 F.2d 788, 790 (5th Cir.1972); *Hall,* 322 F.Supp. at 95; *Southern Pacific Transportation Co. v. Allen,* 525 S.W.2d 300, 306 (Tex.Civ.App.1975).

This circuit's leading case on the setoff question is *Russo.* There we followed the influential 1971 opinion of the Minnesota district court in *Hall,* 322 F.Supp. 92, which involved medical and hospital benefits paid to a railway employee under Policy GA–23000. In *Hall,* the court looked first to the collective bargaining agreement between the union and the railroad. That agreement differed from the later agreement involved in this case, negotiated in 1975. The earlier agreement did not contain any express declaration of the relation between benefits for on-the-job injuries and FELA liability. The court observed in *Hall* that the collective bargaining agreement in that case required that the employer make premium payments to the insurer "much as an employer might at the direction of his employee deduct money from wages and forward them directly to that employee's creditor or bank savings plan." *Hall,* 322 F.Supp. at 96. Thus, the *Hall* court inferred, the policy was a "fringe benefit given in part consideration for the employee's services." *Id.* The *Hall* court also relied on the fact that the policy as a whole did not appear to be intended to indemnify the employer against liability, but was written to provide general medical benefits without regard to liability on the part of the employer. The court concluded that the payments should be regarded as a collateral source and disapproved a setoff:

> On the basis of the foregoing, the court concludes that where the insurance policy is one of general hospital and medical coverage upon which the insured may make claim without regard to liability on the part of the employer, such a policy is a fringe benefit maintained by the employer and is in effect part of the employee's income for services rendered, and the collateral source rule prohibits set-off of premiums paid or benefits received thereunder by the employee. In this court's opinion Section 5's express set-off proviso was not intended and does not permit set-off of amounts "paid" or "contributed" by the employer to a policy

of such general coverage pursuant to a collective bargaining contract.

*Hall*, 322 F.Supp. at 97, quoted in *Russo* at 1020. The Sixth Circuit reached a similar result denying a setoff, also in the absence of a specific provision in the collective bargaining agreement to the contrary, in *Patterson v. Norfolk & Western Railway*, 489 F.2d 303 (1973), as did the Second Circuit in *Blake v. Delaware and Hudson Railway Co.*, 484 F.2d 204 (2d Cir.1973). *See also Urbaniak*, 424 F.Supp. at 984.

The Second Circuit's decision in *Blake* merits special discussion. Judge Friendly's influential concurring opinion has been repeatedly cited.[4] Judge Friendly pointedly stated that the denial of setoff in that case constituted a harsh requirement of double payment by the employer. He went on to say that the result requiring double payment could have been avoided by a provision in the collective bargaining agreement characterizing the benefits as intended to offset liability under the FELA. Judge Friendly said, after noting that the common law collateral source rule would not bar the setoff:

> What constrains me nevertheless to concur is that here we are governed not by federal common law but by statute. Under 45 U.S.C. § 55 [section 5 of the FELA], the railroad is entitled to set off only the premiums, not what the premiums bought. This was recognized as long ago as *Bangor & Aroostook R. Co. v. Jones*, 36 F.2d 886 (1 Cir.1919). If the railroads wish to avoid the harsh result reached by the district court, they can accomplish this by specific provision in the collective bargaining agreement. *See Thomas v. Humble Oil & Refining Co.*, 420 F.2d 793 (4 Cir.1970).

*Blake*, 484 F.2d at 207 (Friendly, J., concurring) (underscoring added).[5]

Judge Friendly's point in *Blake* can properly be understood for our purposes only in the context of the Fourth Circuit's ruling in *Thomas v. Humble Oil and Refining Co.*, 420 F.2d 793 (4th Cir.1970), a Jones Act case that Judge Friendly's concurrence endorsed. In *Thomas*, the Fourth Circuit permitted setoff of payments made under a collectively bargained for disability benefit plan provided by the employers. The collective bargaining agreement in that case was different from the collective bargaining agreement in *Blake*. The agreement in *Thomas* provided that payments into the plan were not to be regarded as wages and that payments made to the injured sailor under the disability benefit plan would be set off against amounts owed to the sailor under the right to maritime maintenance. Thus, Judge Friendly in *Blake* was not suggesting that the amount of insurance

---

**4.** *Gonzalez,* 638 F.Supp. at 310; *Diaz,* Civil No. H 79–13, slip op. at 3–4; *Herbst,* CV–84–51–BLG, slip op. at 2 [Available on WESTLAW, DCT database]; *Lucht,* 489 F.Supp. at 190; *Urbaniak,* 424 F.Supp. at 984; *Thomas,* 379 F.Supp. at 28; *Allen,* 525 S.W.2d at 306–07.

**5.** Some courts have focused on the language referring to a setoff of "premiums, not what the premiums bought." Those courts have suggested that an employer, even one contributing to an industry-wide benefit plan, may never set off amounts exceeding the fraction of premium payments which might be traced to insurance for the particular employee or accident involved. *See Herbst,* CV–84–51–BLG (D.Mont. Apr. 22, 1985) [Available on WESTLAW, DCT database]; *Anderson,* 709 P.2d at 647–48; *see also Lucht,* 489 F.Supp. at 190 (dictum). This circuit, however, has adopted a different view. *See Russo,* 486 F.2d at 1020. In *Russo,* as here, the overall employer contributions to the plan were far in excess of the benefits received under it by the plaintiff. We there recognized that the statutory language of section 5 "does not provide for a setoff of 'benefits received,'

but rather for a setoff of 'any sum … contributed.'" We then established the employer's total contributions to the fund as the outer limit of setoff and did not attempt to limit the setoff to a sum representing the contribution for an individual employee. We instead deemed the crucial question to be whether the insurance should be regarded as a fringe benefit collateral to the employee's liability:

> Clearly, the statute does not provide for a setoff of "benefits received," but rather for a setoff of "any sum … contributed." Therefore, any setoff to which [the employer] … might be entitled must be limited to the amount it has contributed to the pension plan. [The employer] … claims, however, that this amount is far in excess of the benefits being received by Russo.

> . . . . .

> The issue, then, is whether the pension benefits come from a "collateral source," or directly from [the employer] as compensation for Russo's injury.
> *Id.*

benefits received can never be offset. His point was that if the employers wished the insurance to fulfill their liabilities under FELA, they should endeavor to negotiate a provision to that effect in the collective bargaining agreement.

Taking the cue from Judge Friendly, the railroads and the union expressly provided for setoff in the 1975 collective bargaining agreement. This provision is still in effect. Thus, the collective bargaining agreement now stipulates that benefit payments are intended, at least in part, for the express purpose of indemnifying the railroads against FELA liability.

It is well established in this circuit that the purpose and nature of the insurance benefits are controlling. *See Russo,* 486 F.2d at 1020; *Gypsum Carrier,* 307 F.2d at 534 n. 31. Here, the purpose of the insurance coverage, as expressly described in the collective bargaining agreement, is to indemnify the employer against FELA liability. It follows that setoff should be allowed and that the benefits in this case should not be regarded as a collateral source. This is consistent with our decision in *Russo,* which denied setoff in the absence of any stipulation as to purpose in the collective bargaining agreement.

Our decision today is also consistent with the Eighth Circuit's decision in *Clark,* which held that setoff was appropriate where the disability plan explicitly provided that amounts paid would decrease benefits allowable under the FELA. *Clark,* 726 F.2d at 451. As the Eighth Circuit observed, "the employers' manifest intent to avoid double liability in offering disability plans must be respected if the collateral source rule is not to swallow up 45 U.S.C. § 55 at the ultimate expense of employees." *Id.* In *Clark,* as in this case, the court was dealing with benefits paid regardless of whether the injury was job-related, but nevertheless held that setoff was appropriate because of the intent of the Congress to permit the employer to avoid

double liability. *Clark,* 726 F.2d at 450–51; *accord Gonzalez v. Indiana Harbor Belt Railroad Co.,* 638 F.Supp. 310 (N.D.Ind. 1986); *see also Hall,* 322 F.Supp. at 95; *Gaulden v. Southern Pacific Co.,* 78 F.Supp. 651, 655–56 (N.D.Cal.1948); *Chicago and Northwestern Railway Co. v. Davenport,* 205 F.2d 589, 594 (5th Cir.1953), *cert. denied,* 346 U.S. 930, 74 S.Ct. 320, 98 L.Ed. 422 (1954); *Culmer v. Baltimore & O.R. Co.,* 1 F.R.D. 765, 766 (W.D.Penn. 1941).

Given the facts of this case, the result we reach does not conflict with any of the holdings of the Supreme Court, or any federal court of appeals decisions. No such cases have denied setoff in the face of a collective bargaining agreement provision stipulating the purpose of the benefits in FELA cases.[6] Our holding is, however, in conflict with an earlier decision of the same district judge who decided the instant case, *John L. Herbst v. Burlington Northern Railroad Co.,* CV–84–51–BLG (D.Mont. Apr. 22, 1985) [Available on WESTLAW, DCT database], and with a decision of the Montana Supreme Court, *Anderson v. Burlington Northern, Inc.,* 709 P.2d 641, 647–48 (Mont.1985), *cert. denied,* —— U.S. ——, 106 S.Ct. 2902, 90 L.Ed.2d 988 (1986), that relied on *Herbst.* These decisions, as well as dicta in *Clark,* 726 F.2d at 450–51, and *Allen,* 525 S.W.2d at 307, appear to give no effect to the 1975 collective bargaining agreement's stipulation providing that benefits paid under the policy are intended to offset FELA recovery. These cases take out of context Judge Friendly's statement in *Blake* that "the railroad is entitled to set off only the premiums, not what the premiums bought," 484 F.2d at 207. *See Herbst,* 638 F.Supp. at 310; *see also Lucht v. Chesapeake & Ohio Railway Co.,* 489 F.Supp. at 190; *Anderson,* 709 P.2d at 647. Judge Friendly's fundamental point was that no setoff of benefits can flow from the statute in the absence of a stipulation that the insurance benefits paid to an injured employee are intended to indemnify the employer for FELA liability.

---

6. Our holding is thus fully consistent with the cases holding, in the absence of any stipulation, that setoff should be denied where the insurance is not limited to coverage of FELA liability.

*See Russo,* 486 F.2d at 1021 & n. 1; *Blake,* 484 F.2d at 205; *Hall,* 322 F.Supp. at 94, 96–97; *Allen,* 525 S.W.2d at 307.

Such a stipulation is present here and hence setoff should have been allowed.

Reversed and remanded with instructions to reduce the judgment by the amount of benefits received.