as the district court noted, this was a probation violation, we conclude that the district court did not abuse its discretion in sentencing Leibel to 90 days in jail.

## CONCLUSION

For the foregoing reasons, we affirm the judgment of the district court.

AFFIRMED.

---

SHAWN T. STRASBURG, APPELLEE, V. UNION PACIFIC
RAILROAD COMPANY, A DELAWARE
CORPORATION, APPELLANT.

___ N.W.2d ___

Filed November 1, 2013.    No. S-12-999.

1. **Statutes: Appeal and Error.** Statutory interpretation is a question of law that an appellate court resolves independently of the trial court.
2. **Contracts: Compromise and Settlement: Appeal and Error.** Allocation of a settlement agreement is reviewed for an abuse of discretion.
3. **Torts: Damages.** The collateral source rule provides that benefits received by the plaintiff from a source wholly independent of and collateral to the wrongdoer will not diminish the damages otherwise recoverable from the wrongdoer.
4. **Torts: Damages: Tort-feasors: Liability.** The theory underlying the collateral source rule is to prevent a tort-feasor from escaping liability because of the act of a third party, even if a possibility exists that the plaintiff may be compensated twice.
5. **Torts: Damages: Insurance: Tort-feasors.** Under the collateral source rule, the fact that the party seeking recovery has been wholly or partially indemnified for a loss by insurance or otherwise cannot be set up by the wrongdoer in mitigation of damages. But if the tort-feasor contributed in some way to the benefits provided to the injured person, then the tort-feasor might be entitled to mitigation of damages.
6. **Statutes: Appeal and Error.** Absent anything to the contrary, an appellate court will give statutory language its plain and ordinary meaning.
7. **Federal Acts: Railroads: Employer and Employee: Liability: Compromise and Settlement.** Under the Federal Employers' Liability Act (FELA), when an injured employee has alleged that both a FELA and a non-FELA defendant are responsible for the injury, the majority rule holds that a settlement with the non-FELA defendant results in a dollar-for-dollar offset in the judgment against the nonsettling FELA defendant.
8. **Federal Acts: Railroads: Liability: Compromise and Settlement.** There is no loss of consortium recovery in an action under the Federal Employers' Liability

Act, and any settlement reached on a loss of consortium claim is not subject to setoff against the defendant in such action.

9. **Contracts: Compromise and Settlement: Proof.** The burden to show that the allocation set forth in a settlement agreement was not reasonable lies with the party seeking credit against the settlement.

10. **Judgments: Appeal and Error.** As a general proposition, an appellate court does not require a district court to explain its reasoning. Only in certain situations is a court required to make findings of fact, typically by request, or as required by statute or court rule.

Appeal from the District Court for Douglas County: MARLON A. POLK, Judge. Affirmed.

Gary J. Nedved and Joel Bacon, of Keating, O'Gara, Nedved & Peter, P.C., L.L.O., for appellant.

William Kvas, Richard J. Dinsmore, and Katie Figgins for appellee.

HEAVICAN, C.J., WRIGHT, CONNOLLY, STEPHAN, McCORMACK, MILLER-LERMAN, and CASSEL, JJ.

HEAVICAN, C.J.

## I. INTRODUCTION

Shawn T. Strasburg filed an action under the Federal Employers' Liability Act (FELA), 45 U.S.C. § 51 et seq. (2006), against Union Pacific Railroad Company (Union Pacific). Strasburg alleged that he was injured in the course of his employment and that his injuries were caused by Union Pacific's negligence. A jury trial was held, and a verdict was entered for Strasburg in the amount of $1,032,375.43. Following trial, the district court allowed Union Pacific to set off the verdict in the amount of $425,000 because of a settlement reached with another defendant, and additionally enforced a medical lien in the amount of $139,845.03 against that settlement. Union Pacific appeals.

## II. FACTUAL BACKGROUND

On March 12, 2009, Strasburg was employed as a carman for Union Pacific. On that day, he was attending a Union Pacific safety class taught by Union Pacific employees. That class was held at a community college in North Platte, Nebraska,

in a classroom which was solely dedicated to the instruction of Union Pacific employees. Ironically, while Strasburg was attending this safety class, the chair upon which Strasburg was seated collapsed, causing injury to Strasburg's back which necessitated disk replacement surgery.

Strasburg filed a FELA action against Union Pacific and also filed suit against the manufacturer of the chair, Steelcase Inc. (Steelcase). In addition, Strasburg's wife, Robin Strasburg, filed suit against Steelcase, alleging loss of consortium. Strasburg and Robin settled their case against Steelcase for $725,000. Per the terms of the agreement, the settlement was allocated at $425,000 for Strasburg's claim and $300,000 for Robin's claim.

Prior to trial, Union Pacific filed for a medical lien against the Steelcase settlement in the amount of $135,151.01, the amount it had paid out on Strasburg's behalf as of that time. A hearing was held, but the district court declined to enforce the lien at that time, concluding that the lien rights should not be determined until after the conclusion of the FELA action.

A jury trial was held. The primary issue litigated at trial was of causation. There was no dispute at trial regarding the necessity or payment of Strasburg's medical bills. The trial court admitted exhibit 27, which was a list of Strasburg's medical and prescription expenses. That exhibit indicated that Strasburg had total medical expenses of $261,413.43 as billed by the providers. This exhibit was the only evidence presented at trial regarding medical expenses; Union Pacific and Strasburg stipulated to its admissibility. But in fact, Union Pacific had contracted with Strasburg's medical providers to pay a reduced rate on Strasburg's behalf, an amount reflected in the various medical liens Union Pacific filed against Strasburg.

The jury returned a general verdict for Strasburg in the amount of $1,032,375.43. Neither party requested a special verdict form.

Following the verdict, Union Pacific filed a motion for new trial and a renewed motion to enforce the medical lien against settlement proceeds. The latter motion requested a lien on the Steelcase settlement in the amount of $139,945.03, or the

amount that had been paid out to date in medical benefits on Strasburg's behalf. Though not entirely clear from the record, it appears the difference in the lien amount sought prior to and after trial was due to other bills that had been paid by Union Pacific in the interim.

A hearing was held on these motions. Several issues were discussed at that hearing. One issue was the motion for new trial, which was later denied. Any issues relating to that denial have not been appealed.

Also at issue at the hearing was the lien for medical expenses and the appropriate amount of the medical expense setoff. Union Pacific alleged that it was entitled to a lien against the Steelcase settlement in the amount of $139,945.03 for medical expenses paid, and was also entitled to a setoff for the difference between the total amount of Strasburg's bills—$261,413.43—and the amount actually paid to settle those bills—$139,945.03—or $121,468.40. Explained simply, Union Pacific argues that it was entitled to a setoff of the entire amount of Strasburg's medical expenses—$261,413.43—and not just a setoff for the amount actually paid to settle those bills.

Finally, Union Pacific sought a setoff for the amount of the settlement with Steelcase that was attributable to Strasburg's claims. But Union Pacific alleged that the allocation reflected in the settlement agreement—$425,000 for Strasburg and $300,000 for Robin—should be modified to more accurately reflect the relative injury suffered by each.

The district court granted the motion to enforce the medical lien for the amount paid by Union Pacific, but denied Union Pacific's request to set off the remainder of the medical expenses as reflected in exhibit 27. (Note that the district court allowed the lien in the amount of $139,845.03, although Union Pacific had requested a lien in the amount of $139,945.03. This $100 difference was apparently the result of an error by the district court, with which the parties do not take issue on appeal.) The district court declined to modify the allocation of the Steelcase settlement, but allowed Union Pacific a setoff of $425,000 against the jury verdict for that settlement.

Union Pacific appeals.

## III. ASSIGNMENTS OF ERROR

Union Pacific assigns that the district court erred in (1) not allowing a setoff of the portion of Strasburg's medical bills that were written off by Strasburg's medical providers as a result of negotiations between Union Pacific and the providers and (2) not modifying the allocation of the Strasburgs' settlement with Steelcase and setting off that reallocated amount from the verdict.

## IV. STANDARD OF REVIEW

[1] Statutory interpretation is a question of law that an appellate court resolves independently of the trial court.[1]

[2] Allocation of a settlement agreement is reviewed for an abuse of discretion.

## V. ANALYSIS

### 1. Setoff for Medical Expenses

On appeal, Union Pacific assigns that the district court erred in not permitting it to set off the portion of Strasburg's medical bills as reflected in exhibit 27 that were written off by Strasburg's medical providers as a result of negotiations between Union Pacific and the providers, an amount referred to herein as the "writeoff amount." We note Strasburg's medical expenses were paid by Union Pacific Railroad Employes Health Systems, which is a third-party administrator for Union Pacific's health plan. Any rights Union Pacific Railroad Employes Health Systems might have against Strasburg have been assigned to Union Pacific, and accordingly, we refer to Union Pacific Railroad Employes Health Systems as "Union Pacific" for ease of comprehension.

There is no dispute that Union Pacific is entitled to a lien for the amount actually paid; such a lien was requested by Union Pacific and enforced by the district court. The only issue on appeal is whether the district court erred when it denied Union Pacific's request to also set off the writeoff amount.

---

[1] *DMK Biodiesel v. McCoy*, 285 Neb. 974, 830 N.W.2d 490 (2013).

### (a) Legal Framework

[3-5] We begin with an explanation of the underlying legal principles, in particular the collateral source rule and 45 U.S.C. § 55. The collateral source rule provides that benefits received by the plaintiff from a source wholly independent of and collateral to the wrongdoer will not diminish the damages otherwise recoverable from the wrongdoer.[2] The theory underlying the adoption of this rule by a majority of jurisdictions is to prevent a tort-feasor from escaping liability because of the act of a third party, even if a possibility exists that the plaintiff may be compensated twice.[3] Under the collateral source rule, the fact that the party seeking recovery has been wholly or partially indemnified for a loss by insurance or otherwise cannot be set up by the wrongdoer in mitigation of damages.[4] But if the tort-feasor contributed in some way to the benefits provided to the injured person, then the tort-feasor might be entitled to mitigation of damages.[5]

This common-law rule was codified, with modifications, by 45 U.S.C. § 55:

Any contract, rule, regulation, or device whatsoever, the purpose or intent of which shall be to enable any common carrier to exempt itself from any liability created by this chapter, shall to that extent be void: *Provided*, That in any action brought against any such common carrier under or by virtue of any of the provisions of this chapter, such common carrier may set off therein any sum it has contributed or paid to any insurance, relief benefit, or indemnity that may have been paid to the injured employee or the person entitled thereto on account of the injury or death for which said action was brought.

---

[2] *Countryside Co-op v. Harry A. Koch Co.*, 280 Neb. 795, 790 N.W.2d 873 (2010).

[3] *Id*.

[4] *Fickle v. State*, 274 Neb. 267, 759 N.W.2d 113 (2007).

[5] See *Huenink v. Collins*, 181 Neb. 195, 147 N.W.2d 508 (1966) (citing 25 C.J.S. *Damages* § 99(2) (1966)).

This section has been interpreted to mean that if the intent of "any sum . . . contributed or paid to any insurance, relief benefit, or indemnity" was in exchange for indemnification from FELA liability, then setoff is appropriate.[6] If not, and if the intent of the sum is to provide some type of benefit akin to compensation, then setoff is impermissible.[7] It is generally accepted that although under 45 U.S.C. § 55 a railroad may set off only the amount of the premiums and not what the premiums bought, this "harsh result" can be avoided "by specific provision in the collective bargaining agreement."[8]

The collective bargaining agreement that governs the employment relationship between Union Pacific and Strasburg contains such a provision. As such, Union Pacific and Strasburg's union contracted for a limited waiver of FELA liability. In return for the payment of certain benefits—in this case, via a health plan which paid all expenses related to an on-the-job injury—Union Pacific was entitled to indemnification from FELA liability. The question remaining is the value of that indemnification.

### (b) Amount of Setoff

Union Pacific contends that in denying its request for a setoff of the writeoff amount, Union Pacific was denied the benefit of its bargain under the collective bargaining agreement and Strasburg was granted a windfall. Strasburg disagrees and argues that Union Pacific is entitled to set off only those funds which it paid to settle his medical bills.

Resolution of this issue is a legal question involving the interpretation of 45 U.S.C. § 55, namely whether the writeoff amount is "any sum . . . contributed or paid to any insurance, relief benefit, or indemnity that may have been paid to the injured employee."

---

[6] See *Folkestad v. Burlington Northern, Inc.*, 813 F.2d 1377 (9th Cir. 1987).

[7] See *id.*

[8] *Blake v. Delaware and Hudson Railway Company*, 484 F.2d 204, 207 (2d Cir. 1973) (Friendly, J., concurring). See *Folkestad v. Burlington Northern, Inc., supra* note 6.

[6] Absent anything to the contrary, an appellate court will give statutory language its plain and ordinary meaning.[9] And the plain meaning of the language used by Congress when drafting 45 U.S.C. § 55 was that an employer may set off any sum paid or contributed. Union Pacific did pay certain funds on Strasburg's behalf and is undisputedly entitled to a setoff of $139,845.03 for that payment. But it did not pay or contribute the writeoff amount, and it is not entitled to set off such amount under the plain language of 45 U.S.C. § 55.

Nor are we convinced by Union Pacific's argument that Strasburg received a windfall where the jury awarded the medical expenses as billed, when in fact Strasburg paid none of those expenses. The jury's verdict was a general one, and thus it is not possible to know what amount was actually awarded to Strasburg for his medical expenses.

Moreover, Union Pacific did not object to exhibit 27, the exhibit which listed all of Strasburg's medical expenses, and in fact, Union Pacific stipulated to its admission. Union Pacific did not offer any other evidence contradicting the impression left by exhibit 27 that the medical expenses in that exhibit were actually incurred in full by Strasburg.

The plain language of 45 U.S.C. § 55 does not provide for a setoff of the insurance writeoff amount. And the record shows that Union Pacific failed to take actions that might have prevented the award of medical expenses which Union Pacific claims the jury made and with which Union Pacific now takes issue. On these facts, the statute does not require, and equity does not demand, that Union Pacific's request be granted. As such, we conclude that the district court did not err in denying Union Pacific's request for setoff of that amount.

Union Pacific's first assignment of error is without merit.

## 2. Setoff of Steelcase Settlement

On appeal, Union Pacific assigns that the district court erred in not closely scrutinizing the Strasburgs' settlement with Steelcase. Union Pacific contends the settlement overallocated

---

[9] *In re Interest of Zylena R. & Adrionna R.*, 284 Neb. 834, 825 N.W.2d 173 (2012).

funds to Robin's loss of consortium claim while underfunding Strasburg's claim in an effort to reduce the amount of that settlement, which was subject to setoff by any verdict received against Union Pacific.

### (a) Factual and Procedural Background

Prior to trial, Strasburg and Robin settled their action against Steelcase, the company that manufactured the chair on which Strasburg was sitting when he was injured. The total settlement was for $725,000. By the terms of the settlement, $425,000 was allocated to Strasburg's claim and $300,000 was allocated to Robin's loss of consortium claim.

Following the verdict, Union Pacific filed for a setoff of the settlement proceeds and additionally requested that the district court reallocate more of the settlement to Strasburg. At a hearing held postverdict on various motions, Union Pacific introduced into evidence the settlement agreement, a loss of earning capacity report on Strasburg, and a deposition taken of Robin. Following the hearing at which the record was left open, Strasburg filed an affidavit on the issue of the settlement allocation.

The district court granted Union Pacific's request for setoff for the Steelcase settlement for $425,000, the amount allocated to Strasburg's claim in the settlement agreement. The district court noted that it had reviewed the briefs and records, but did not otherwise make any findings regarding the allocation.

### (b) Analysis

[7,8] Under FELA, when an injured employee has alleged that both a FELA and a non-FELA defendant are responsible for the injury, the majority rule holds that a settlement with the non-FELA defendant results in a dollar-for-dollar offset in the judgment against the nonsettling FELA defendant.[10] But there is no loss of consortium recovery in a FELA action, and any settlement reached on a loss of consortium claim is not subject to setoff against the FELA defendant.[11]

---

[10] See *Schadel v. Iowa Interstate R.R., Ltd.*, 381 F.3d 671 (7th Cir. 2004).

[11] See *Dixon v. CSX Transp., Inc.*, 990 F.2d 1440 (4th Cir. 1993).

Union Pacific directs us to case law suggesting, at least in the workers' compensation context, that a trial court has the responsibility to closely scrutinize a settlement agreement to ensure that an employer's rights are not abused.[12] Union Pacific further contends that the district court wholly failed to scrutinize this settlement. While we agree with Union Pacific that a district court should not simply rubberstamp a previous settlement in this context, we disagree that the district court failed to adequately scrutinize this settlement.

[9] The burden to show that the allocation set forth in the Steelcase settlement was not reasonable lies with the party seeking credit against the settlement, in this case Union Pacific.[13] In an attempt to meet its burden, Union Pacific introduced an earning capacity report regarding Strasburg, and also introduced Robin's deposition testimony, in which Robin indicated that at the time of the settlement, it was not expected that Strasburg would ever work again. In addition, Robin testified that it was expected Strasburg would need further surgery, and that her duties as a parent had significantly increased because she did many of those duties on her own—in addition to her duties caring for Strasburg because of his injuries.

In response, Strasburg offered his affidavit indicating that contrary to Robin's testimony, Strasburg had submitted to his physician for comment and review a list of jobs at Union Pacific that he would be able to perform with his likely physical restrictions. While it was not definitively decided, Strasburg contends that at the time of settlement, it was likely that he would be able to return to work.

[10] Union Pacific argues that the lack of specific findings by the district court shows that the district court failed to consider the reasonableness of the allocation set forth in the settlement. As a general proposition, this court does not require

[12] See, *Rains v. Kolberg Mfg. Corp.*, 897 P.2d 845 (Colo. App. 1994); *Blagg v. Ill. F.W.D. Truck & Equip. Co.*, 143 Ill. 2d 188, 572 N.E.2d 920, 157 Ill. Dec. 456 (1991).

[13] See, *Davis Erection Co. v. Jorgensen*, 248 Neb. 297, 534 N.W.2d 746 (1995); *Home Fed. Sav. & Loan v. McDermott & Miller*, 243 Neb. 136, 497 N.W.2d 678 (1993).

a district court to explain its reasoning. Only in certain situations is a court required to make findings of fact, typically by request,[14] or as required by statute[15] or court rule.[16] And our review of the district court's record does not suggest that the district court failed to examine the settlement agreement simply because it did not make specific findings.

First, no request was made asking for such specific findings. Further, the record, in particular the district court's order on this issue, shows that the district court presided over the trial in this matter, received a motion regarding the proper amount of setoff, and then held a hearing on the setoff request. And the order disposing of Union Pacific's motion specifically noted that the district court had reviewed the briefs and record.

We decline to presume that the district court simply failed to consider the motion filed before it when it did not make findings which no Nebraska case, statute, or rule required of it, particularly in light of the fact that the language of the order clearly shows that the request was considered. We reject Union Pacific's suggestion that the district court failed to consider the reasonableness of the agreement. Rather, we review the district court's order for an abuse of discretion[17] and find none.

The evidence presented at the hearing showed that Robin was essentially a single parent to the Strasburgs' four children. At one point, Robin had a job to help support the family, but was unable to both work and parent her children effectively. Strasburg, particularly in the time following the accident and subsequent medical care and surgery, was not able to provide much assistance. More surgery was expected. The couple's

---

[14] *Lindgren v. City of Gering*, 206 Neb. 360, 292 N.W.2d 921 (1980) (district court must make specific findings upon request of party).

[15] See, *In re Interest of Shaquille H.*, 285 Neb. 512, 827 N.W.2d 501 (2013) (motion to discharge—speedy adjudication); *State v. Williams*, 277 Neb. 133, 761 N.W.2d 514 (2009) (motion to discharge—speedy trial); *State v. Constanzo*, 235 Neb. 126, 454 N.W.2d 283 (1990) (postconviction).

[16] Neb. Ct. R. § 4-203 (rev. 2011).

[17] See 47 Am. Jur. 2d *Judgments* § 830 (2006).

marriage was strained by the injury and by its emotional and physical toll on Strasburg. Money was tight; Robin described it as "living penny by penny." The couple had to borrow from Robin's father, who was retired and on a fixed income, in order to survive. The children were not able to participate in sports or other activities.

Union Pacific makes much of the fact that Robin was not employed during this time, while Strasburg's injury meant that the couple was without his wages. Union Pacific also notes that when the Steelcase settlement was entered, the couple did not believe that Strasburg would ever work again. But that was contradicted by Strasburg's affidavit, which suggested that it was not a foregone conclusion that he would not work again. And in fact, the record shows that Strasburg is back at work as a carman for Union Pacific, admittedly with some physical restrictions.

Given this evidence, and the evidence presented at trial, it cannot be said that the district court abused its discretion in concluding that the settlement was allocated appropriately by the settlement agreement. The fact that the district court did not make findings or otherwise explain its decision does not prevent us from reaching that decision.

Union Pacific's second assignment of error is without merit.

### VI. CONCLUSION

The decision of the district court is affirmed.

AFFIRMED.