379 F.Supp. 24 (1974)
James THOMAS, Plaintiff,
v.
PENN CENTRAL COMPANY, a corporation, Defendant.
Civ. A. No. 73-392.
United States District Court, W. D. Pennsylvania.
July 11, 1974.
Dennis C. Harrington, Pittsburgh, Pa., for plaintiff.
Aloysius F. Mahler, Pittsburgh, Pa., for defendant.

OPINION AND ORDER
SNYDER, District Judge.
In this F.E.L.A. action there was a Verdict for the Plaintiff in the amount of $47,134.00. The entire amount of the Verdict was paid with the exception of $3,374.80, which amount the Defendant Railroad paid to various hospitals, doctors *25 and creditors of the Plaintiff for medical expenses after the verdict, and now asks for complete satisfaction of the Judgment entered on the Verdict.
The Plaintiff contends that he is entitled to receive this amount from the Railroad although the bills were not paid by him because the Railroad will be reimbursed therefor from a policy of insurance known as Travelers Group Policy Contract No. GA-23000. He invokes the Collateral Source Rule and contends:
1. That since it was with his money that the medical expenses were paid, he is entitled to the insurance therefor.
2. Had the Plaintiff made the medical payments himself, he would have been entitled to reimbursement from Travelers as the insured under the same policy.
3. If the Railroad is entitled to reimbursement, at all, it is only to the extent of the premiums that were paid by them under the specific provision of Travelers Group Policy Contract #GA-23000, which requires that the Railroad "will transmit to the Travelers Insurance Company 81 cents per `Qualifying Employee' per month as premium for the insurance benefit payments resulting from on-duty injuries."
Plaintiff quotes, as mandating his interpretation, the provisions of 45 U.S.C. A. § 55 which reads as follows:
"Any contract, rule, regulation, or device whatsoever, the purpose or intent of which shall be to enable any common carrier to exempt itself from any liability created by this chapter, shall to that extent be void: Provided, That in any action brought against any such common carrier under or by virtue of any of the provisions of this chapter, such common carrier may set off therein any sum it has contributed or paid to any insurance, relief benefit, or indemnity that may have been paid to the injured employee or the person entitled thereto on account of the injury or death for which said action was brought."

A. COLLATERAL SOURCE RULE.
It is well established that a plaintiff's recovery under the ordinary negligence rule is limited to damages which will make him whole, but a plaintiff is also permitted further recovery under certain circumstances where it is felt that the wrongdoer should not receive the benefit of money or services received in reparation of the injury caused which emanate from sources other than the wrongdoer. Feeley v. United States, 337 F.2d 924, 926, 12 A.L.R. 3d 1228 (3d Cir. 1964); Kagarise v. Shover, 218 Pa.Super. 287, 275 A.2d 855 (1971).
The rationale behind the application of the Collateral Source Rule has been that there is no double recovery as long as the plaintiff has contributed to the original source of the payments received. Cf. Moidel v. Peoples Natural Gas Company, 397 Pa. 212, 154 A.2d 399 (1959); Littman v. Bell Telephone Co., 315 Pa. 370, 172 A. 687 (1934). Thus, in City of Philadelphia v. Philadelphia Rapid Transit Co., 337 Pa. 1, 10 A.2d 434 (1940), the City, pursuant to statute, continued to pay an injured fireman the equivalent of his salary while he was disabled. The court found that the sums were not really wages but were in the nature of disability compensation and payments under an accident insurance policy, and should be treated in the same manner, i. e. such payments have been disregarded in determining the amount of damages to which the injured plaintiff was entitled. This principle was reaffirmed in Palandro v. Bollinger, 409 Pa. 296, 186 A.2d 11 (1962) and Kagarise v. Shover, supra.
We then come to an examination of the applicability of the rules to Group Policy Contract No. GA-23000.
Our Circuit has twice refused to permit F.E.L.A. plaintiffs to recover for medical payments already paid for them under similar railroad insurance contracts. In Wagner v. Reading Company, *26 428 F.2d 289 (3d Cir. 1970), the Court held (at p. 292, fn. 7):
"Also plaintiff contends that the trial judge erred in permitting defendant to show that the defendant had paid the plaintiff's medical bills which were introduced in evidence, especially since defendant was reimbursed for such expenses by an insurance carrier. Whereas the `collateral source rule' permits a plaintiff to recover such expenses although he has been reimbursed by his own insurance carrier or where a showing has been made that the defendant itself has paid the bills, intending a gift to the plaintiff, we have found no authority for the proposition that payment by the defendant's insurance carrier qualifies as a `collateral source' within this rule and permits plaintiff to recover for damages already paid for by the defendant." [Citation omitted]
See also: Fuhrman v. Reading Company, 439 F.2d 10, 14 (3d Cir. 1971).
Judge Knox of this Court had occasion to construe Policy No. GA-23000 and held that on the basis of the full facts regarding the history and purpose of the separate insurance provisions in question, that the decisions of the Third Circuit in Wagner v. Reading Company, supra, and Fuhrman v. Reading Company, supra, were controlling. In the case of Poux v. Erie Lackawanna Railway Co., (C.A. 77-72 Erie 1973), Judge Knox declared from the bench that under the Collateral Source Rule the insurance reimbursement was not a collateral source using the following language:
"The language in the . . . Agreement of August 19, 1960, to some extent fortifies this situation because it clearly states the amounts so transmitted are not considered as wage equivalents and, hence, you can't argue that the plaintiff, himself, has had this taken out of his pay envelope for the purpose of paying these premiums, which is the basis for allowing collateral sources or excluding evidence about payings of collateral sources which are financed by the Plaintiff.
It appears the very language of this agreement says that this money is paid by the Railroad. Whether it is to cover their FELA liability or not, I think is beside the point with respect to on-duty injuries which may or may not be the subject of an FELA suit.
I consider myself bound, gentlemen, by Fuhrman against the Reading Company and Wagner against the Reading Company, to hold that monies paid by the insurer, the Travelers Insurance Company, under the policy . . . and monies paid directly by the Railroad itself, on account of its liability, cannot be used as a basis for bills to be submitted to the Jury as a basis for recovery of such bills by the Plaintiff."
The statements made by Judge Knox are borne out by the Affidavit of William L. Burner, Jr. filed in this case which points out that for many years there was a widespread industry practice of paying medical expenses of injured employees incurred by reason of injuries sustained in the course of their employment, whether or not the railroad was liable for such injuries. In 1955 a number of railroads, including Defendant's predecessors, entered into a collective bargaining agreement with the union representing their non-operating employees, in which the union elected to receive somewhat lower wages than those provided for operating employees and to receive as a fringe benefit in lieu of the difference in wages an insurance policy providing several kinds of benefits to such employees. At that time, the railroads elected to provide a fund for the payment of medical bills for on-duty injuries within the same policy.
Subsequently, in the course of collective bargaining which led to adoption of the Agreement of August 19, 1960 with the non-operating employees, the union representative took the position that the separate premium for the medical reimbursement was to be entirely at the expense *27 of the railroad and entirely apart from the payment of wages to the non-operating employees. As a result, the Collective Bargaining Agreement of August 19, 1960, expressly provided in Article V, Section 1(d)(1):
"In addition . . ., carriers whose employees are insured under The Travelers Insurance Company Group Policy Contract No. GA-23000 . . . will transmit to The Travelers Insurance Company 81 cents per `Qualifying Employee' per month as premium for the insurance benefit payments resulting from on-duty injuries. The amounts so transmitted are not considered as wage equivalents; separate experience rating of benefits payable by reason of on-duty injuries will be maintained; any retroactive premium credit based on such separate experience rating will be separately determined and will be held in the Special Account as a separate fund to be applied to the cost of insurance benefits payable as a result of on-duty injuries."
The 1960 Agreement remains in effect without amendments to the section in question, and applies to the Plaintiff in the present case. Thus, the reasoning of Judge Knox was clearly correct that the plaintiff himself did not contribute to the insurance coverage and, therefore, when the defendant pays the entire premium he is entitled to the credit for the medical reimbursement so paid. As Judge Knox said, "It appears the very language of this agreement says that this money is paid by the Railroad."

B. APPLICATION OF SECTION 5.
As noted previously herein, the Plaintiff contends that regardless of the Collateral Source Rule the deduction by the Railroad of its payment for medical expenses would be in violation of Section 5 of the Federal Employers' Liability Act, 45 U.S.C.A. § 55. That provision of the Statute, in pertinent part, is as follows:
"Any contract, rule, regulation, or device whatsoever, the purpose or intent of which shall be to enable any common carrier to exempt itself from any liability created by this chapter, shall to that extent be void: . . ."
Congress set forth very clearly that railroad employees should have full payment from their employer for all of their F.E.L.A. liabilities; the source of the funds by which the railroad might pay such liability is not indicated as being of concern so long as the employee received full compensation for his injuries. Thus, a railroad may indemnify itself against such liability by agreement with third parties. Chicago & N. W. Ry. Co. v. Davenport, 205 F.2d 589, 594 (5th Cir. 1953), cert. denied, 346 U. S. 930, 74 S.Ct. 320, 98 L.Ed. 422; Culmer v. Baltimore & O. R. Co., 1 F.R.D. 765 (W.D.Pa.1941). Furthermore, a railroad whose employee has already been compensated for on-duty injuries by a third party, which has obtained a release benefiting the railroad, may enforce that release in the employee's subsequent F.E.L.A. action, and such a release is not a prohibitive device under Section 5 although the railroad, without itself contributing to the payment, has been able to cut off the employee's cause of action. Panichella v. Pennsylvania Railroad Company, 268 F.2d 72 (3d Cir. 1959), cert. denied 361 U.S. 932, 80 S.Ct. 370, 4 L.Ed.2d 353. So too where the railroad has made payments on account of on-duty injuries and has merely been reimbursed by an insurance policy which it has purchased for that purpose, such a policy cannot be a prohibitive device intended by the carrier "to exempt itself from any liability"; rather, it is a method of obtaining funds to pay such liability and would thus not fall within the prohibition of the Statute.
The Court's attention has been called to the cases of Hall v. Minnesota Transfer Railway Company, 322 F.Supp. 92 (D.Minn.1971) and Blake v. Delaware and Hudson Railway Co., 484 F.2d 204 (2d Cir. 1973). In Hall, the Court considered and construed Policy No. GA-23000 *28 as being a general purpose medical policy written as a wage equivalent to provide a multiplicity of benefits for employees and their families, because of incomplete affidavits which were before that court. In Blake, the plaintiff argued that the insurance coverage for medical payments arose from a collective bargaining agreement while the defendant resisted that argument on the basis that the court should not look behind the simple fact that the contract was a policy of insurance. Thus, the case was before the court on a very similar posture as that in Hall, without evidence as to the critical issue of the underlying purpose and separate funding of the on-duty medical benefits clause. On this basis, Judge Thomsen of the District of Maryland, sitting by designation, expressly relied upon the Hall interpretation holding that the Collateral Source Rule applied. Circuit Judges Friendly and Lombard, declared the application of the Collateral Source Rule to be unjust even in that posture. Thus, apparently, the Second Circuit is in general agreement that there is a clear distinction between medical expense reimbursement insurance on the one hand and collateral sources, such as retirement benefits, on the other. This Court is of the opinion that had the Second Circuit had before it all of the facts and circumstances as we have in this case, the Collateral Source Rule would not have been applied. See also: Patterson v. Norfolk and Western Railway Company, 489 F. 2d 303 (6th Cir. 1973) and Russo v. Matson Navigation Company, 486 F.2d 1018 (9th Cir. 1973).
We believe, therefore, that the deduction for medical expenses paid to the Plaintiff by the Defendant Railroad was a proper deduction and was not a violation of Section 5 of the Federal Employers' Liability Act.
An appropriate order will be entered.