**Richard MEAD**

v.

**NATIONAL RAILROAD PASSENGER CORPORATION t/a Amtrak**

v.

**HOLLAND COMPANY.**

**Civ. No. Y-86-717.**

United States District Court,
D. Maryland.

May 26, 1987.

Irving Schwartzman, and Roger J. Greezicki, Balto., Md., for plaintiff.

Joseph P. Gill, Mark J. Daneker, and Michael W. Prokipik, Balto., Md., for defendant.

Jonathan E. Claiborne, Harry S. Johnson, and Warren N. Weaver, Balto., Md., for third-party defendant Holland Co.

## MEMORANDUM

JOSEPH H. YOUNG, District Judge.

Richard Mead, injured during the course of his employment with the National Railroad Passenger Corporation ("Amtrak"), sued Amtrak under the Federal Employers' Liability Act, 45 U.S.C. § 51 *et seq.* Amtrak subsequently impleaded the Holland Company as a third-party defendant. Following a jury trial of Mead's claim against Amtrak, Amtrak's third-party claim against Holland was tried to the Court while the jury deliberated.

Before proceeding to the resolution of Amtrak's claim against Holland, a preliminary issue requires discussion. Prior to trial of Mead's action against his employer, Amtrak filed a motion in limine to preclude plaintiff from introducing any testimony or other evidence regarding medical expenses incurred by Mead which had already been paid by Amtrak. Both parties presented oral argument, following which this Court granted Amtrak's motion in an oral opinion and agreed to issue this written memorandum further explicating its decision.

## I. AMTRAK'S MOTION IN LIMINE

Pursuant to the terms of the collective bargaining agreement between the railroad and its employees, the bulk of Mead's medical expenses were paid for by Amtrak through its insurance coverage, the Travelers Insurance Company Group Policy Contract GA–23000. Amtrak sought a pre-trial ruling that medical bills paid by Amtrak or its insurer on behalf of Mead were not governed by the collateral source rule, and that plaintiff should be prohibited from presenting any evidence of these medical expenses.

Plaintiff opposed Amtrak's motion, arguing that it contravened Section 5 of the Federal Employers' Liability Act (FELA), which provides that "[a]ny contract ... or device ..., the purpose or intent of which shall be to enable any common carrier to exempt itself from any liability created by this chapter, shall to that extend be void." 45 U.S.C. § 55.[1] Plaintiff contended that an order excluding evidence of medical expenses paid by defendant's insurer would effectively exempt Amtrak from liability for the cost of all medical care resulting from plaintiff's work-related injury.

In support of his argument, plaintiff relied on *Poole v. Baltimore & Ohio R.R. Co.*, 657 F.Supp. 1 (D.Md.1985), wherein a motion in limine identical to the one at issue here was denied. That decision was grounded on the collateral source rule,

---

**1.** The full text of 45 U.S.C. § 55 reads as follows:

Any contract, rule, regulation, or device whatsoever, the purpose or intent of which shall be to enable any common carrier to exempt itself from any liability created by this chapter, shall to that extent be void: Provided, That in any action brought against any such common carrier under or by virtue of any of the provisions of this chapter, such common carrier may set off therein any sum it has contributed or paid to any insurance, relief benefit, or indemnity that may have been paid to the injured employee or the person entitled thereto on account of the injury or death for which said action was brought.

which prevents a tortfeasor from mitigating damages by setting off payments received by the injured party from an independent source.

Application of the collateral source rule depends upon the character of the benefits received, as explained in *Haughton v. Blackships, Inc.*, 462 F.2d 788 (5th Cir. 1972):

The policy considerations for the collateral source rule are apparent. On the one hand, an employer-tortfeasor who voluntarily undertakes to indemnify itself against liability by payment into a fund for that purpose, should not be penalized by permitting the plaintiff a double recovery of his benefits under the fund as well as his full measure of damages. On the other hand, where the employer-tortfeasor makes payment directly or indirectly into a fund established for an independent reason, or where such payment by the employer should be considered in the nature of a fringe benefit or deferred compensation, the employer should not be entitled to benefit by setting off such income in mitigation of his responsibility as a tortfeasor.

462 F.2d at 791. The decisive factor in determining whether the insurance proceeds at issue constitute a collateral source is the character of the benefits received: fringe benefit versus indemnification. *Clark v. Nat'l R.R. Passenger Corp.*, 654 F.Supp. 376, 377 (D.D.C.1987); *Nelson v. Penn Central R.R. Co.*, 415 F.Supp. 225, 226 (N.D.Ohio 1976).

In *Poole* it was determined that the insurance coverage provided by Traveler's GA–23000 policy was a fringe benefit given in part consideration for the railroad employee's services. As such, the court ruled, it constituted a collateral source and plaintiff was allowed to introduce evidence concerning the cost of the medical treatment he received.

■ This Court respectfully disagrees with the analysis in *Poole*. The express terms of the collective bargaining agreement between Amtrak and its employees establishes that Group Policy Contract GA–

23000 is designed to indemnify the railroad against liability, and is not intended as a fringe benefit for the employees:

In case of an injury or a sickness for which an employee who is eligible for employee benefits under Group Policy Contract GA–23000 and may have a right of recovery against either the employing railroad or a third party tort-feasor ..., or both, benefits will be provided under the policy contract subject to the provisions hereinafter set forth. The parties hereto do not intend that benefits provided under the policy contract will duplicate, in whole or in part, any amount recovered from either the employing railroad or a third party tort-feasor for hospital, surgical, medical or related expenses of any kind specified in the policy contract, and they intend that benefits provided under the policy contract will satisfy any right of recovery against the employing railroad for such benefits to the extent of the benefits so provided. Accordingly,—

(1) Benefits provided under the policy contract will be offset against any right of recovery the employee may have against the employing railroad for hospital, surgical, medical or related expenses of any kind specified in the policy contract.

Article III, Section A, of the Health and Welfare Agreement dated October 22, 1975. "The parties to the collective bargaining agreement have made unmistakably clear their intent that the insurance policy at issue here is not a fringe benefit for employees...." *Clark v. Nat'l R.R. Passenger Corp., supra*, 654 F.Supp. at 378.

Because the insurance policy is not a fringe benefit, proceeds paid out under it do not constitute a collateral source. Accordingly, plaintiff has no right to recover as damages those medical expenses paid by Amtrak or its insurer. Evidence of those bills is not relevant to plaintiff's case and should not be admitted. *Accord Fuhrman v. Reading Co.*, 439 F.2d 10, 14 (3d Cir. 1971); *Clark v. Nat'l R.R. Passenger Corp., supra* (court granted motion in li-

mine to preclude plaintiff from offering evidence of medical expenses paid by defendant or under Group Policy GA–23000); *Gonzalez v. Indiana Harbor Belt R.R. Co.*, 638 F.Supp. 308, 310 (N.D.Ind.1986) (same); *Nelson v. Penn Central R.R. Co.*, *supra* (insurance policy GA–23000 is indemnity against liability rather than a fringe benefit); *Thomas v. Penn Central Co.*, 379 F.Supp. 24, 26–27 (W.D.Penn. 1974).

Courts which have refused to allow the insurance payments to be set off against a railroad's FELA liability have done so in the absence of the provision in the collective bargaining agreement outlined above. *See Patterson v. Norfolk and Western Ry. Co.*, 489 F.2d 303 (6th Cir.1973); *Blake v. Delaware and Hudson Ry. Co.*, 484 F.2d 204 (2d Cir.1973); *Hall v. Minnesota Transfer Ry. Co.*, 322 F.Supp. 92 (D.Minn. 1971). Indeed, Judge Friendly pointed out in *Blake* that if "the railroads wish to avoid the harsh result reached by the district court," which allowed an employee to recover the cost of medical care paid for by the railroad, "they can accomplish this by specific provision in the collective bargaining agreement." 484 F.2d at 207 (Friendly, J., concurring). This is precisely what was accomplished by the 1975 agreement providing for setoff.

Returning to plaintiff's original argument against Amtrak's motion, indemnification against FELA liability does not violate Section 5 of FELA. That provision bars railroads from creating devices or entering into contracts that exempt themselves from full liability for employee injuries. The overall concern of the section "is that an employee be compensated to the full extent of his loss, not that an employer be precluded from indemnifying himself against potential FELA liability as, for instance, by carrying liability insurance coverage." *Hall v. Minnesota Transfer Ry. Co., supra*, 322 F.Supp. at 95. Indemnification against liability is not the same as exemption from liability. The insurance policy at issue does not excuse Amtrak from liability, and thus does not contravene Section 5 of FELA. *Clark v. National*

*R.R. Passenger Corp., supra*, 654 F.Supp. at 378. *Accord Thomas v. Penn Central Co., supra*, 379 F.Supp. at 27.

For the foregoing reasons, and in accordance with the oral opinion given at trial, Amtrak's motion in limine was granted.

## II.  AMTRAK'S CLAIM AGAINST HOLLAND COMPANY

Amtrak's third-party complaint alleges that Holland Company agreed to imdemnify Amtrak against the type of claim brought by Richard Mead. In September 1983, Amtrak hired Holland to perform welding on railroad ties. According to Section V of the purchase-order agreement between Amtrak and Holland, Holland agreed that it would "be responsible for initiating, maintaining and supervising all safety precautions ... in connection with the work." Third-Party Plaintiff Exhibit 3. Holland also agreed:

> ... to protect, indemnify and save harmless AMTRAK from and against any suit, claim, damage and expense by reason of any accident, injuries, or damages which may occur as a result of the work performed by HOLLAND. HOLLAND shall be responsible for all damages and expenses on account of injuries (including death) to any of the employees of AMTRAK while on the premises of AMTRAK in connection with operations performed or to be performed under the contract and HOLLAND shall defend at its sole expense all claims or damage suits, whether against AMTRAK or HOLLAND which may arise in consequence of such injuries.

Section VIII of the purchase-order agreement, Third–Party Plaintiff Ex. 3.

Holland began welding tracks in Lanham, Maryland in early October 1983. It provided a self-propelled vehicle known as a "track welder" to perform this work. On October 14, 1983 Richard Mead was employed by Amtrak as the foreman of a work gang engaged in cutting rails for the track-welder to weld. As an Amtrak train travelled past the work site on a parallel track, a door on the track welder flew open and swung into the passing train. The

impact shattered the upper corner of the door and scattered debris through the welding area. Mead was injured by the flying debris.

Mead filed a claim against Amtrak for his injuries. Amtrak subsequently tendered this claim to Holland for indemnification and defense pursuant to the purchase-order agreement. Third–Party Plaintiff Ex. 4. Holland denied liability and refused to make any payments to Amtrak or Mead. Third–Party Plaintiff Ex. 5. In March 1986, Mead filed suit against Amtrak. Amtrak then filed a third-party complaint against Holland, alleging that Holland was responsible for payment of Mead's claim under the indemnity agreement, and also alleging that Holland was liable to Amtrak for common law indemnification and contribution.

Mead proceeded to trial against Amtrak, at the conclusion of which the jury awarded Mead $100,000 in damages. Amtrak seeks indemnification for the full amount of its liability to Mead, plus attorney's fees and costs of litigation, pursuant to the indemnity clause in the purchase-order agreement. Holland argues that Amtrak's negligence caused Mead's injuries, and therefore Holland is not liable to Amtrak. Amtrak contends that despite the fact that the jury found it negligent, the broad indemnity agreement requires Holland to indemnify.

All contracts entered into by Amtrak are governed by District of Columbia law. 45 U.S.C. § 546(d). Under D.C. law, a contract of indemnity will not be construed to indemnify a party against its own negligence unless it clearly appears that such was the parties' intention. *District of Columbia v. Royal,* 465 A.2d 367, 369 (D.C. 1983). The terms of an indemnity agreement "may be so broad and comprehensive that although it contains no express stipulation indemnifying against a party's own negligence, it accomplishes the same pur-

pose." *Princemont Constr. Corp. v. B & O R.R. Co.,* 131 A.2d 877, 878 (D.C.Mun. App.1957). In such a case, "the presumption is that if the parties had intended some limitation of the all-embracing language, they would have expressed such limitation." *Id. Accord Bland v. L'Enfant Plaza North, Inc.,* 473 F.2d 156, 157 (D.C.Cir. 1972); *Moses–Ecco Co. v. Roscoe–Ajax Corp.,* 320 F.2d 685, 688 (D.C.Cir.1963); *District of Columbia v. General Heating Engineering Co.,* 168 A.2d 903, 905 (D.C. Mun.App.1961), *aff'd,* 301 F.2d 549 (D.C. Cir.1962).

■ Holland agreed to "protect, indemnify and save harmless AMTRAK from and against *any* suit, claim, damage and expense by reason of *any* accident, injuries or damages which may occur as a result of the work performed by HOLLAND" (emphasis added). Holland argues that no evidence suggested its negligence caused Mead's injuries, and that nothing arising out of Holland's work contributed to the accident. The indemnity agreement does not limit Holland's liability to instances of its own negligence.[2] In addition, the accident certainly occurred as a result of work performed by Holland. In order to weld Amtrak's rails, Holland placed an automatic welder on the track. Richard Mead was near this machine cutting rails to be welded when the train passed by. Contact between the automatic welder and the passing train scattered the debris which hit Mead. But for the presence of this welder, with which Holland was performing work for Amtrak, Mead's injuries would not have occurred.

Moreover, the indemnity agreement explicitly provides complete indemnification for injuries to certain Amtrak employees. The agreement states that Holland "shall be responsible for *all* damages and expenses on account of injuries ... to *any* of the employees of AMTRAK while on the

**2.** Courts have not found intent to indemnify a party against its own negligence where the contract of indemnity contained language akin to an agreement to indemnify for liability arising from "any act, omission or default" of the indemnitor. *See District of Columbia v. Royal,*

465 A.2d 367, 368–69 (D.C.1983); *District of Columbia v. C.F. & B., Inc.,* 442 F.Supp. 251, 255 (D.D.C.1977). The agreement at issue in the instant case, by contrast, contains no such limiting language.

premises of AMTRAK in connection with operations performed or to be performed under the contract" (emphasis added). Mead was clearly on Amtrak premises in connection with work to be performed under Holland's contract: he was foreman of a gang that prepared rails for welding. The expansive language in the indemnity agreement encompasses any injuries to such employees. While the agreement does not expressly indemnify Amtrak against its own negligence, its terms are so broad and comprehensive that they accomplish that purpose. *Princemont, supra,* 131 A.2d at 878; *Moses–Ecco, supra,* 320 F.2d at 688. Accordingly, Holland is obligated to indemnify Amtrak against its liability to Mead.[3]

Holland concedes that if it is required to indemnify Amtrak, then Amtrak may recover attorney's fees and expenses. Thus, the damages and expenses for which Holland must reimburse Amtrak include the jury award; medical expenses paid by Amtrak on behalf of Mead and not encompassed by the jury verdict; and attorney's fees and expenses. The total has been calculated as follows:

$100,000.00 — jury award
    83.24 — bill from Doctor's Hospital (Third–Party Plaintiff Ex. 6)
  159.55 — bill from Fallston General Hospital (Third–Party Plaintiff Ex. 8)
   76.00 — bill for radiology (Third–Party Plaintiff Ex. 10)
  225.00 — bill from Dr. Ronald Cann (Third–Party Plaintiff Ex. 12)
 7,100.00 — attorney's fees and expenses.
$107,643.79 — TOTAL.

Amtrak had requested attorney's fees and expenses totalling $14,082.18. This exorbitant amount is not reasonable for the investigation and preparation of this two-day trial. Amtrak conducted only one deposition, researched and prepared only two pretrial motions, called one expert witness,

and was faced with a relatively straightforward defense to a claim for damages and a straightforward third-party complaint for indemnification.[4] Accordingly, an award of $7,100 including expenses is reasonable compensation for the work required in this case.

For the foregoing reasons, this Court concludes that Amtrak is entitled to indemnification from Holland Company in the amount of $107,643.79.

## ORDER

In accordance with the attached Memorandum, it is this 26th day of May, 1987, by the United States District Court for the District of Maryland, ORDERED:

1. That judgment BE, and the same hereby IS, ENTERED in favor of the plaintiff against Amtrak in the amount of $100,000.00;

2. That judgment BE, and the same hereby IS, ENTERED in favor of National Railroad Passenger Corporation in its third-party claim against Holland Company;

3. That Holland Company pay National Railroad Passenger Corporation the sum of $107,643.79; and

4. That a copy of this Memorandum and Order be mailed to counsel for the parties.

---

3. At the bench trial, Holland presented evidence that its insurer requested certain documents from Amtrak in order to investigate Mead's claim. Third–Party Defendant Ex. 1. Holland argued that its insurer never received those documents and, if it had, Holland might have handled the claim differently. There was no evidence that Holland's insurer did not receive the documents or, in the event the documents were not produced, what difference they would have made. A speculative argument about how the case might have been handled differently is not sufficient to defeat Amtrak's claim.

4. A review of counsel's time records reveals Mr. Gill logged 8 hours for trial time on March 16, 1987 and 11 hours for trial time on March 17. Actually, the Court's notes indicate the trial consumed 5 hours on March 16 and 6.5 hours on March 17. This substantial discrepancy casts doubt on the accuracy of counsel's time records.