**Ronald FORD**

v.

**NATIONAL RAILROAD PASSENGER CORPORATION, t/a Amtrak.**

Civ. No. PN–88–2523.

United States District Court,
D. Maryland.

April 2, 1990.

Irving Schwartzman, Savage & Schwartzman, P.A., Baltimore, Md., for plaintiff.

Mark J. Daneker and David B. Goldstein, Semmes, Bowen & Semmes, Baltimore, Md., for defendant.

## OPINION AND ORDER

NIEMEYER, District Judge.

Ronald Ford was injured on the job on September 23, 1985, while employed by the National Railroad Passenger Corporation (Amtrak) as an Amtrak police officer. He was injured when he was knocked down or fell to the ground in pursuing a suspect who had attempted to break into an automobile parked at the Pennsylvania Station in Baltimore. Although he lost time from work by reason of his injuries, he received full wages from Amtrak and his medical expenses were paid by Amtrak through a Traveler's Group Policy No. GA–23000, which had been obtained by Amtrak. Ford later filed suit against Amtrak under the Federal Employers' Liability Act ("FELA").

The case stands at the threshold of trial and the defendant has filed a motion in limine to exclude from the evidence to be presented at trial any evidence of medical bills paid by Amtrak through Group Policy No. GA–23000. It argues that it has already paid plaintiff his medical expenses and should not be required to do so again as the result of a jury verdict. As a fallback position, Amtrak argues that if the evidence is admitted, it should be allowed to present evidence of those amounts already paid to the plaintiff through the group policy as a setoff.

Ford has opposed the motion, arguing that the Group Policy No. GA–23000 is a collateral source of payment subject to the collateral source rule. That rule provides that a defendant is not entitled to credit against damages owed by the defendant for payments received by the plaintiff from a collateral source. *See, e.g., Restatement of Torts, Second* § 920A (1979). The underlying principle is founded on the notion that if a plaintiff obtains a right to reimbursement for injury at some expense to himself, the defendant is not entitled to the benefit of this source but rather should pay the full loss that he caused. The collateral payment is part of a bargain obtained by the plaintiff either by the payment of a premium or as a negotiated fringe benefit of his employment.

Thus, if Group Policy No. GA–23000 is a fringe benefit that is part of plaintiff's employment package, the collateral source rule applies and plaintiff would be entitled to present evidence of his medical expenses. If, on the other hand, the policy was obtained by Amtrak to assist it in its discharge of responsibility to employees under FELA, payments made to plaintiff, whether directly by Amtrak or through its policy of insurance, should not be payable twice.

The question whether plaintiff may introduce at trial evidence of medical expenses which had been paid under Group Policy No. GA–23000 has been raised repeatedly in this District and there is a split of opinion on the question. See *Poole v. Baltimore and Ohio R.R. Co.*, 657 F.Supp. 1 (D.Md.1985), and *Walton v. National R.R. Passenger Corp.*, 673 F.Supp. 744 (D.Md. 1986), for decisions which found that Group Policy No. GA–23000 was a collateral source and therefore denied the motion in limine. See *Mead v. National R.R. Passenger Corp.*, 676 F.Supp. 92 (D.Md.1987), and *Francis v. National R.R. Passenger Corp.*, 661 F.Supp. 244 (D.Md.1987), for decisions where the motion in limine was granted and evidence of medical bills was excluded. The Fourth Circuit has not addressed the issue.

The Court in this case has reached the conclusion that payments made through Group Policy No. GA–23000 are not from a collateral source and that therefore the

plaintiff should be denied the right to offer evidence of medical bills in support of its claim for damages on the ground that those damages have already been paid to the plaintiff. This result is clearly intended by the collective bargaining agreement between Amtrak and its employee unions.

In a joint Health and Welfare Agreement entered into on October 22, 1975, between the railroads represented by the National Carriers' Conference Committee and their employees represented by their unions, the parties included a provision that revealed the intent to treat medical payments made under Group Policy No. GA–23000 as a discharge of Amtrak's responsibility under FELA and not as a fringe benefit that would be subject to the collateral source rule. The particular provision, Article 3 § A, provides in part as follows:

In cases of an injury or a sickness for which an employee who is eligible for employee benefits under Group Policy Contract GA–23000 and may have a right of recovery against either the employing railroad or a third party tortfeasor (a party who has committed a wrongful act), or both, benefits will be provided under the policy contract subject to the provisions hereinafter set forth. The parties hereto do not intend that benefits provided under the policy contract will duplicate, in whole or in part, any amount recovered from either the employing railroad or a third party tortfeasor for hospital, surgical, medical or related expenses of any kind specified in the policy contract, and they intend that benefits provided under the policy contract will satisfy any right of recovery against the employing railroad for such benefits to the extent of the benefits so provided. Accordingly,

(1) Benefits provided under the policy contract will be offset against any right of recovery the employee may have against the employing railroad for hospital, surgical, medical or related expenses of any kind specified in the policy contract.

The inclusion of this provision was a direct response to decisions before 1975

where payment under the policy was construed to be from a collateral source giving rise to the possibility of double payment by the jury. In *Blake v. Delaware and Hudson Ry. Co.*, 484 F.2d 204 (2nd Cir.1973), Judge Friendly, in a concurring opinion, stated that the denial of set-off in that case constituted a harsh requirement of double payment by the employer. He stated that the result could have been avoided by the inclusion of a provision addressing the issue in the collective bargaining agreement:

If the railroads wish to avoid the harsh result reached by the district court, they can accomplish this by specific provision in the collective bargaining agreement. See *Thomas v. Humble Oil and Refining Co.*, 420 F.2d 793 (4 Cir.1970).

*Id.* at 207. In 1975 railroads and the unions did just that.

The Court is further persuaded by the reasoning of the decisions in *Mead* and *Clark v. National Ry. Passenger Corp.*, 654 F.Supp. 376 (D.D.C.1987).

Although medical bills will be excluded *to prove damages*, the plaintiff urges that the bills are nevertheless relevant to prove the nature and extent of injury. This is an issue of evidence to be considered quite apart from the collateral source rule.

Amtrak argues that the amount of medical bills is irrelevant to the nature and extent of injury and in any event would prove to be prejudicial. If admitted, however, Amtrak urges that at the least it should be able to prove that the bills were in fact paid by Amtrak. See *Folkestad v. Burlington Northern, Inc.*, 813 F.2d 1377 (9th Cir.1987).

Again the decisions in our District are split on the issue. See, e.g., *Francis* (excluding the evidence as irrelevant), and *Brice v. National R.R. Passenger Corp.*, 664 F.Supp. 220 (D.Md.1987) (allowing the evidence as probative of the nature and extent of injury). See also *Kendig v. Consolidated Rail Corp.*, 671 F.Supp. 1068 (D.Md.1987) (allowing the evidence as relevant to a determination of the nature and extent of injury).

It is recognized by the Court that attorneys use "special damages," i.e. cash ex-

penses incurred as a result of injury, as a measure in evaluating the total potentially recoverable award from a jury. Because pain and suffering are not quantifiable, attorneys are confronted with the same problem that confronts the factfinder at trial, i.e. to attempt to quantify money damages for pain and suffering which by their nature are not quantifiable. While juries and courts sitting as finders of fact are suited to address damages in terms of dollars and are cautioned to award damages only when their amount is proved with reasonable certainty, the unfortunate practice of submitting to juries issues of damage which cannot be resolved by them under any fair and definable criterion is permitted to continue. Because special damages are considered by attorneys as a tool in evaluating potential total damage awards, however, does not make special damages probative of the nature or extent of injury when the special damage aspect of loss has been satisfied and is no longer at issue.

It is conceivable, for instance, that a plaintiff who has broken three ribs incurs expenses only for an emergency room visit and x-rays for a total cost of $200, whereas another plaintiff who has been kicked in the groin causing internal bleeding incurs expenses for two nights in the hospital for observation, x-rays, and various tests for a total cost of $2,000. Are we to conclude that the second plaintiff therefore was injured ten times greater than the first? It is submitted that the jury would be presented with a far more accurate set of facts to evaluate injury itself if the dollar amounts are excluded from the evidence.

An argument can no doubt be made based on different hypotheticals that correlate injury and medical bills. However, the very fact that a hypothetical can be conceived where the amount of medical bills is misleading as to the nature and extent of injury casts doubt on their usefulness. The Court believes that any attempt to describe when medical bills are misleading when offered to prove the extent of injury would only lead to jury confusion in this case where medical bills themselves are no longer relevant because they have been paid. Juries would pay undue attention to the medical bills as evidence of damages despite instructions directing them to consider the bills only to the extent they are probative of the nature and extent of injuries. Under Rule 403 of the Federal Rules of Evidence, the Court therefore will follow the holding in *Francis* and exclude the amounts of medical bills in this case. If the bills contain information, other than dollar amounts, that are relevant to the nature or extent of injury or its treatment, they will be allowed if the dollar amounts have been deleted.

For the reasons given in this Opinion, it is hereby ORDERED this 2nd day of April, 1990, that:

1. the motion of the defendant in limine to exclude evidence of medical bills is granted, subject to the limitations stated in the Opinion.