**Mark MUZZLEMAN, Plaintiff,**

**v.**

**NATIONAL RAIL PASSENGER CORPORATION, Defendant.**

Civ. A. No. 92–355 MMS.

United States District Court,
D. Delaware.

Dec. 13, 1993.

Stephen B. Potter, Potter, Crosse & Leonard, P.A., Wilmington, DE (Robert N. Peirce, Jr., Robert Peirce & Associates, P.A., Pittsburgh, PA, of counsel), for plaintiff.

Somers S. Price, Potter Anderson & Corroon, Wilmington, DE, for defendant.

## OPINION

MURRAY M. SCHWARTZ, Senior District Judge.

Plaintiff, Mark Muzzleman, has filed suit pursuant to the Federal Employers' Liability Act ["FELA"], 45 U.S.C. § 51 *et seq.*, against the National Rail Passenger Corporation ["Amtrak"] to recover for physical injuries sustained while employed by Amtrak. Presently before the Court are various pretrial issues which the parties have been unable to resolve.

## I. ADMISSIBILITY OF MEDICAL BILLS PAID BY AMTRAK OR AMTRAK'S INSURANCE

Plaintiff has proffered bills for medical expenses as evidence of damages he has sustained. Amtrak argues the Court should exclude these bills from evidence because they have been paid by Amtrak or its insurance carrier. Both parties agree Section 5 of FELA, 45 U.S.C. § 55, governs the resolution of this question, but disagree as to the statute's effect. The full text of this provision provides:

Any contract, rule, regulation, or device whatsoever, the purpose or intent of which shall be to enable any common carrier to exempt itself from any liability created by this chapter, shall to that extent be void: *Provided,* That in any action brought against any such common carrier under or by virtue of any of the provisions of this chapter, such common carrier may set off therein any sum it has contributed or paid to any insurance, relief benefit, or indemnity that may have been paid to any injured employee or the person entitled thereto on account of the injury or death for which said action was brought.

45 U.S.C. § 55 (1986) (emphasis in original).

Amtrak asserts plaintiff is covered by Amtrak's collective bargaining agreement, which states that employees will receive benefits as provided under the Health and Welfare Plan.

Docket Item ["D.I."] 39. The Health and Welfare Plan states:

> In case of an injury or a sickness for which an Employee who is eligible for Employee benefits and may have a right of recovery against the employing railroad, benefits will be provided under the Policy Contract, subject to the provisions hereinafter set forth. The parties hereto do not intend that benefits provided under the Policy Contract will duplicate, in whole or in part, any amount recovered from the employing railroad for hospital, surgical, medical or related expenses of any kind specified in the Policy Contract, and they intend that benefits provided under the Policy Contract will satisfy any right of recovery against the employing railroad for such benefits to the extent of the benefits so provided. Accordingly, benefits provided under the Policy Contract will be offset against any right of recovery the Employee may have against the employing railroad for hospital, surgical, medical or related expenses of any kind specified in the Policy Contract.

D.I. 40 (National Health and Welfare Agreement, Art. III, § A (Oct. 22, 1975), *quoted in,* Health and Welfare Plan, amended Aug. 1, 1993, at 101). Further, Amtrak argues this issue has been decided in *Clark v. National Railroad Passenger Corporation,* 654 F.Supp. 376 (D.D.C.1987), in which the court excluded all evidence of medical expenses paid by the railroad or its insurance. D.I. 32 at 3.

■ Plaintiff makes two arguments regarding the medical records. First, citing 45 U.S.C. § 55, plaintiff argues the records are admissible because Amtrak may not attempt to "exempt itself from any liability" created by FELA. D.I. 36. Specifically, plaintiff asserts courts have struck down release provisions contained in railroad disability benefits plans because employees cannot waive rights in connection with an injury before the injury occurs.[1] Plaintiff, however, misconstrues FELA's language. Indemnification against liability is not an exemption from liability. Because the collective bargaining agreement does not exempt Amtrak from FELA liability, but only indemnifies Amtrak, the agreement does not contravene the statute's plain language. *See Mead v. National R.R. Passenger Corp.,* 676 F.Supp. 92, 95 (D.Md.1987); *Clark v. National R.R. Passenger Corp.,* 654 F.Supp. 376, 378 (D.D.C.1987); *Thomas v. Penn Central Co.,* 379 F.Supp. 24, 27 (W.D.Pa.1974); *cf. Panichella v. Pennsylvania R.R. Co.,* 268 F.2d 72, 75 (3d Cir.1959) (broad and general release executed by employee operated to bar FELA action against railroad), *cert. denied,* 361 U.S. 932, 80 S.Ct. 370, 4 L.Ed.2d 353 (1960).

■ Secondly, plaintiff argues Amtrak bears the burden of establishing an entitlement to a set off, and that any such set off is limited to the contributions Amtrak made, not the benefits plaintiff received. D.I. 33 at 3; D.I. 36. Despite the statutory language limiting set off to any sum "contributed or paid" most courts have held "an employer is entitled to set off the entire amount of benefits paid by a policy it pays for if the collective bargaining agreement between the employer and the employee's union expressly provides that the purpose of the policy is to indemnify the employer against FELA liability rather than serve as a wage equivalent for the employees." *Varhol v. National R.R. Passenger Corp.,* 909 F.2d 1557, 1565 n. 1 (7th Cir.1990). *See, e.g., Folkestad v. Burlington Northern, Inc.,* 813 F.2d 1377, 1382–83 (9th Cir.1987); *Mead v. National R.R. Passenger Corp.,* 676 F.Supp. 92, 94 (D.Md. 1987); *Clark v. National R.R. Passenger Corp.,* 654 F.Supp. 376, 378 (D.D.C.1987). Thus, with respect to plaintiff's contention that any set off is limited to insurance contributions, the Court must examine the collective bargaining agreement in effect between plaintiff and Amtrak.

The Health and Welfare Plan referenced in the collective bargaining agreement provides that "*benefits* provided under the Policy Contract will be offset against any right of

---

**1.** Plaintiff cites the *Citation* case as authority for this proposition. While the Court was able to locate 140 cases in which "Citation" appeared in the case name, it was unable to determine to which case plaintiff referred. Had plaintiff supplied a reporter, volume and page number the Court may have had greater success.

recovery[.]" D.I. 40 (emphasis added). The plain language of this agreement demonstrates that the insurance policy and medical benefits provided by it are intended to indemnify Amtrak. Because the parties' agreement makes clear that the insurance policy is not a fringe benefit and that the collateral source rule should not apply to proceeds paid out under it, Amtrak may set off the entire amount of benefits paid to plaintiff.

■ Recognizing that parties to a collective bargaining agreement have the freedom to provide by contract that payments made through an insurance policy will serve to indemnify an employer from FELA liability, the Court concludes plaintiff's medical expenses may not be introduced into evidence. Such evidence is not relevant since plaintiff, by the terms of the collective bargaining agreement, is not entitled to recover the expenses a second time. *See Mead v. National R.R. Passenger Corp.*, 676 F.Supp. 92, 94 (D.Md.1987) (excluding plaintiff's proffered evidence of medical expenses paid by Amtrak or its insurer); *Clark v. National R.R. Passenger Corp.*, 654 F.Supp. 376, 378 (D.D.C.1987) (excluding all direct and indirect evidence of plaintiff's medical expenses paid by Amtrak or its insurer). Accordingly, plaintiff may not introduce into evidence any medical expenses which have been paid by Amtrak or its insurer.

## II. THE USE OF OSHA ENACTMENTS TO ESTABLISH FELA LIABILITY

Plaintiff seeks to use Occupational Safety and Health Administration ["OSHA"] enactments to establish Amtrak's liability under FELA. Plaintiff asserts a violation of OSHA enactments constitutes: (1) negligence per se under FELA; or, in the alternative, (2) evidence of negligence under FELA. D.I. 33 at 4–7; D.I. 36. Amtrak contends, however, that 29 U.S.C. § 653(b)(4) precludes the use of OSHA enactments to establish liability under FELA.[2]

■ With respect to plaintiff's first assertion, the law in this circuit is clear: an OSHA violation may not be used to establish negligence per se or to bar contributory negligence under FELA. *Ries v. National R.R. Passenger Corp.*, 960 F.2d 1156, 1162 (3d Cir.1992). For this reason, the Court will not permit plaintiff to use OSHA violations to establish negligence per se under FELA.

■ With respect to plaintiff's second assertion, the Third Circuit Court of Appeals has held the violation of an OSHA regulation is admissible as evidence of a railroad's negligence under FELA. *Id.* at 1165. In *Ries*, the majority observed that "[e]vidence of an OSHA violation, in and of itself, does not 'affect' liability; it is the inferences that the trier of fact draws from the evidence that 'affect' liability." *Id.* at 1162 n. 5. In its briefs, however, Amtrak emphasizes that it did not contest the admission of an OSHA violation as evidence of negligence in *Ries* and asks the Court to adopt the reasoning of Judge Nygaard's concurring opinion, which argued violations of OSHA should not be introduced even as evidence of negligence under FELA. D.I. 32 at 6 n. 1; D.I. 35 at 5 n. 2.

The Court will not disregard controlling case law from the Third Circuit Court of Appeals. The majority opinion in *Ries* clearly permits the use of OSHA violations as evidence of negligence under FELA. 960 F.2d at 1162. Further, the great weight of authority in other circuits suggests OSHA violations are admissible as evidence of negligence under FELA. *See, e.g., Manes v. Metro–North Commuter R.R.*, 801 F.Supp. 954, 964–65 (D.Conn.1992), *aff'd*, 990 F.2d 622 (2d Cir.1993) (holding OSHA regulations admissible as evidence of negligence under FELA); *Albrecht v. Baltimore & Ohio R.R. Co.*, 808 F.2d 329, 332 (4th Cir.1987) (no reversible error where district court instructed jury that OSHA violations constituted evi-

---

**2.** This section provides:

Nothing in this chapter shall be construed to supersede or in any manner affect any workmen's compensation law or to enlarge or diminish or affect in any other manner the common law or statutory rights, duties, or liabili-

ties of employers and employees under any law with respect to injuries, diseases, or death of employees arising out of, or in the course of, employment.

29 U.S.C. § 653(b)(4) (1985).

dence of negligence under FELA). *Cf. Pratico v. Portland Terminal Co.*, 783 F.2d 255, 264–67 (1st Cir.1985) (holding OSHA violations may be used as evidence of negligence per se under FELA). Accordingly, plaintiff may introduce applicable OSHA enactments as evidence of Amtrak's negligence under FELA.

### III. THE PROPRIETY OF AN ADVERSE INFERENCE CHARGE AS TO AMTRAK'S INABILITY TO LOCATE WORK AND INSPECTION RECORDS FOR THE TIME PERIOD SURROUNDING PLAINTIFF'S INJURY

■ Plaintiff argues the Court should instruct the jury that it may draw an adverse inference from Amtrak's inability to produce work and inspection records for the time period surrounding plaintiff's injury. D.I. 33 at 7–9. Amtrak contends the Court should not give the jury such an instruction because it has made good faith efforts to locate the requested documents and plaintiff has proffered no evidence of actual suppression or withholding of the evidence. D.I. 32 at 8.

■ The courts of this circuit will instruct a jury that it may draw an adverse inference from a party's failure to produce evidence when: (1) the evidence is within the party's possession or control; and (2) it appears there has been "an actual suppression or withholding of the evidence[.]" *Gumbs v. International Harvester, Inc.*, 718 F.2d 88, 96 (3d Cir.1983). *Accord Gilbert v. Cosco Inc.*, 989 F.2d 399, 406 (10th Cir.1993) (adverse inference instruction requires appearance of actual suppression or withholding of evidence); *Glover v. BIC Corp.*, 987 F.2d 1410, 1417 (9th Cir.1993) (bad faith required for adverse inference instruction); *Spesco Inc. v. General Elec. Co.*, 719 F.2d 233, 239 (7th Cir.1983) ("a showing of an intentional act by the party in possession of the allegedly lost or destroyed evidence" required to receive an adverse inference instruction).

Plaintiff has proffered no evidence Amtrak has actually suppressed or withheld the requested work and inspection records. Absent such a showing, the Court will deny the requested adverse inference jury instruction.

### IV. THE BUSINESS RECORD EXCEPTION TO THE HEARSAY RULE AND AMTRAK'S ACCIDENT INVESTIGATION COMMITTEE REPORT

■ Plaintiff argues the Court should exclude Amtrak's accident investigation committee report [the "report"] as inadmissible hearsay. Amtrak counters the report falls within the business record exception of Federal Rule of Evidence 803(6). Rule 803(6) states:

> A memorandum, report, record, or data compilation, in any form, of acts, events, conditions, opinions, or diagnoses, made at or near the time by, or from information transmitted by, a person with knowledge, if kept in the course of a regularly conducted business activity, and if it was the regular practice of that business activity to make the memorandum, report, record, or data compilation, all as shown by the testimony of the custodian or other qualified witness, unless the source of information or the method or circumstances of preparation indicate lack of trustworthiness. The term "business" as used in this paragraph includes business, institution, association, profession, occupation, and calling of every kind, whether or not conducted for profit.

Fed.R.Evid. 803(6). While plaintiff apparently concedes Amtrak is a "business" under the rule, he argues the report: (1) was not made "at or near the time" of the accident; (2) was not part of a "regularly conducted business activity"; (3) does not indicate that it was made by, or generated from information supplied by, a person with knowledge; and (4) is not sufficiently trustworthy. D.I. 33 at 11–12; D.I. 36.

Plaintiff asserts the report was not made at or near the time of the accident because the investigation committee "was not established until 11:00 a.m., though the accident happened at approximately 1:00 a.m." on September 24, 1990. D.I. 33 at 11; D.I. 32 Exhibit B. In response, Amtrak asserts the committee issued its report the same day, and that an accident report issued the same

day is made "at or near the time" for purposes of Rule 803(6). D.I. 35 at 10. While the report itself states the investigation committee was established at 11:00 a.m. on the date of the accident, there is no indication that the report was completed on the same day. *See* D.I. 32 Exhibit B. Nor has Amtrak supplied an affidavit to confirm its assertion that the report was completed on September 24. In fact, the earliest date by which the Court can conclude the report was completed is October 1, 1990.[3] Accordingly, for Amtrak to offer the report pursuant to Federal Rule of Evidence 803(6), it will need to present evidence which establishes when the report was completed.

Secondly, plaintiff contends production of the report was not a "regularly conducted business activity" of Amtrak. D.I. 33 at 11. Citing *Palmer v. Hoffman*, 318 U.S. 109, 63 S.Ct. 477, 87 L.Ed. 645 (1943), plaintiff asserts Amtrak's business is the railroad business and the report is a document prepared in anticipation of litigation. *Palmer*, however, can be distinguished because it involved a report created two days after an accident by a train operator who was likely to be the defendant in a civil suit. 318 U.S. at 113–15, 63 S.Ct. at 480–81. Further, federal courts recognize that where the requirements of Rule 803(6) are satisfied, accident reports generated by a railroad may be admitted into evidence. *See, e.g., Wertz v. Consolidated Rail Corp.*, No. 91–CV–5093, 1993 WL 327819, at *4 1993 U.S.Dist. LEXIS 13563, at **10–12 (E.D.Pa.1993); *Barnes v. St. Louis S.W. Ry. Co.*, No. 90–4044–R, 1992 WL 190623, at **3–4 1992 U.S.Dist. LEXIS 12014, at **8–10 (D.Kan.1992); *Wheeler v. Missouri Pac. R.R. Co.*, No. 86–1231–T, 1988 WL 142421, at **2 1988 U.S.Dist. LEXIS 15044, at **4–6 (D.Kan.1988). Of course, Amtrak must provide an evidentiary foundation upon which the Court may conclude that Amtrak's regular practice is to create such reports.

Thirdly, plaintiff asserts the report does not indicate the source of much of the information contained therein. Specifically, plaintiff notes the report states the temperature was forty-five degrees and dew had fallen when the accident occurred. D.I. 33 at 11. Rule 803(6) requires that each participant in the chain producing the record be acting in the course of the regularly conducted business, or satisfy another exception to the hearsay rule, for the report to be admissible. 4 Jack B. Weinstein & Margaret A. Berger, *Weinstein's Evidence* ¶ 803(6)[04]. To use the report as evidence, Amtrak must provide testimony as to the source of all information and conclusions contained in the report. Absent such a foundation, the Court will redact any portions of the report which do not satisfy an exception to the hearsay rule.

Finally, plaintiff contends the Court should not admit the report because it is not sufficiently trustworthy. Plaintiff objects to the report's conclusions that he failed to obey certain safety rules, used inadequate footing, and no defects existed. D.I. 33 at 12. Amtrak asserts it uses reports such as the one at issue to evaluate its safety procedures and determine methods to prevent repetition of serious accidents. D.I. 35 at 10. Other than the fact the content of the report is not favorable to his position and that it was prepared by what plaintiff calls "hourly employees", plaintiff offers no evidence that the source of information, or the method and circumstances of its collection, indicate a lack of trustworthiness. Provided the witnesses and members of the investigation committee are available for cross examination, the Court holds the jury can properly evaluate the veracity of the report. At trial, the Court may instruct the jury to evaluate the veracity of the report in the light of the testimony and depositions presented.

## V. CONCLUSION

For the foregoing reasons, the Court holds as follows: (1) plaintiff's medical bills paid by Amtrak or its insurance carrier are not admissible at trial; (2) plaintiff may use OSHA enactments as evidence of Amtrak's negligence under FELA, but may not offer the enactments to establish negligence per se;

---

**3.** On October 1, the Department Head reviewed and approved the report. The Court does not decide whether a report completed on October 1 would be "at or near the time" for purposes of Rule 803(6).

(3) the Court will not charge the jury that it may draw an adverse inference from Amtrak's failure to produce work and inspection records for the time period surrounding plaintiff's injury; and (4) the accident investigation committee report may be admitted as an exception to the hearsay rule, provided Amtrak provides a proper evidentiary foundation at trial.

An appropriate order will issue.